# EXHIBIT A

**mcm**  P.O. Box 939019
San Diego, CA 92193-9019

ADDRESS SERVICE REQUESTED

04-19-2007



WILLIAM MILLER

## Settlement Opportunity

| | |
|---|---|
| Contact Information: | Tel (800) 935-4566 |
| | Fax (800) 306-4443 |
| Hours of Operation: | M-Th 6am - 7pm; Fri 6am - 5pm; |
| | Sat 6am - Noon PST |
| Current Owner: | Midland Funding LLC |
| Original Creditor: | CAPITAL ONE |
| | |
| MCM Account No: | ▓▓▓▓▓▓ |
| Current Balance: | $1,292.93 |
| Payment Due Date: | 06-03-2007 |
| Letter Code: | 06651024 |

Dear WILLIAM MILLER,

Welcome! We have a great offer for our new customers.

Midland Funding LLC recently purchased your CAPITAL ONE account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the servicer of this obligation. As the new servicer of this account, we would like to find a positive resolution to your account.

Midland Credit Management, Inc. (MCM) is currently able to offer you a substantial discount of *40% off* your Current Balance *if we receive payment by 06-03-2007.*

What's In It For You? Once MCM receives your payment of $775.76, we will:
• Notify the credit bureaus that the debt is "Paid". *
• Immediately stop all recovery activity on this account.

To accept this offer, simply detach the Acceptance Certificate below and enclose it with your $775.76 payment in the envelope provided. *Please mail your payment no later than 05-27-2007 in* order to receive credit for the 40% off discount by the expiration date 06-03-2007.

If you prefer to speak with one of our Account Managers, please contact us at (800) 935-4566.

**NOTICE: PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

Midland Credit Management, Inc.
(800) 935-4566

*Please tear off and return lower portion with payment in envelope provided*

WILLIAM MILLER

### Acceptance Certificate

| | |
|---|---|
| MCM Account Number: | ▓▓▓▓▓ |
| Current Balance: | $1,292.93 |
| Amount Due: | $775.76 |
| Make Check Payable to: | Midland Credit Management, Inc. |
| Payment Due Date: | 06-03-2007 |

**mcm**
Midland Credit Management, Inc.
Department 8870
Los Angeles, CA 90084-8870



33728

LT1A

**Important Disclosure Information**

> **Please understand this is a communication from a debt collector. This is an attempt to collect a debt.**
> **Any information obtained will be used for that purpose.**

The records associated with the account purchased from CAPITAL ONE reflect that you are obligated on this account, which is in default with a Current Balance of $1,292.93. As the owner of this account, but subject to the rights described below, Midland Funding LLC is entitled to payment of this account. All communication regarding this account should be addressed to MCM and not the previous owner.

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid.

If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment.

If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

If an attorney represents you with regard to this debt, please refer this letter to your attorney. Likewise, if you are involved in an active bankruptcy case, or if this debt has been discharged in a bankruptcy case, please refer this letter to your bankruptcy attorney so that we may be notified.

Please remember, even if you make a payment within 30 days after receiving this notice, you still have the remainder of the 30 days to exercise the rights described above.

* No credit reporting will occur if the federal reporting period has expired, or we have not previously reported on this account.

------------------------------

Please send any correspondence relating to any credit reporting* of this account to:
MCM CREDIT REPORTING DEPARTMENT, 8875 Aero Drive, Suite 200, San Diego, CA 92123.
PLEASE RETAIN THIS ADDRESS FOR ANY ISSUES RELATING SOLELY TO THE CREDIT REPORTING OF YOUR ACCOUNT.

## PRIVACY NOTICE

Midland Credit Management, Inc. ("MCM," also referenced below as *we, our,* and *us*) is delivering this Privacy Notice to you to generally describe the nonpublic personal and financial information we gather about you as the servicer of your account, and our privacy practices relating to such information and how those policies relate to the protection, use and disclosure of your *nonpublic personal information.* Please carefully read this Privacy Notice and Opt Out Notice.

| **What Information Do We Collect?** | **To Whom Do We Disclose Information?** |
|---|---|
| We collect nonpublic personal information about you from the following sources: <br>• Information we receive from you on applications or other forms. This information may include: <br> o Your name <br> o Address <br> o Social security number <br> o Telephone number <br> o Other relevant information that you provide <br>• Information we receive about your account transactions with us, our affiliates, or others including the original creditor. This information may include: <br> o Account balance <br> o Payment history <br> o Account activity <br> o Other customer information <br>• Information we receive from consumer reporting agencies (such as credit scores and history) and other information relating to your creditworthiness | We may disclose nonpublic personal information about our current and former customers to the following types of third parties: <br>• Non-financial companies, such as direct marketers or retailers of consumer products and services <br>• Financial service providers, such as companies engaged in banking, consumer finance, debt purchasing and credit card issuance <br>• Others, such as our affiliated debt purchasers and our parent company <br>• The customer's spouse, if such disclosure is otherwise permitted by law <br><br>We may also disclose nonpublic personal information about our current and former customers to nonaffiliated third parties as required or permitted by law. <br><br>We may disclose all of the information that we collect about our current and former customers, as described to the left under 'What Information Do We Collect?', to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements. |
| **What Information Do We Disclose?** <br>As permitted by law, we may disclose all information that we collect about you, as described above under 'What Information Do We Collect?' | |

**Information Security:** We restrict access to your nonpublic personal information by limiting the access to such information to those employees and contractors who need to know that information to service your account or provide services to you, by requiring companies working for us to protect your information and to agree to use it only to provide the services we ask these companies to perform, and by establishing password requirements and other procedural controls protecting your information from illegal and disclosure. We maintain physical, electronic and procedural safeguards that comply with applicable laws and regulations to guard your nonpublic personal information.

| **Vermont Residents:** The following only applies if you are a resident of Vermont. | **California Residents:** The following only applies if you are a resident of California. |
|---|---|
| You do not need to return the Opt Out Response Form because: <br>• We will not disclose your nonpublic personal information to nonaffiliated parties (other than as permitted by law). <br>• Unless otherwise permitted by law, we will not disclose the information that you provide to us or that we obtain from third parties (such as credit bureaus) to our affiliates. <br>• If we disclose information about you to nonaffiliated third parties with whom we have joint marketing agreements, we will disclose only your name, contact information and information about our transactions or experiences with you. | • You do not need to return the Opt Out Response Form because we will not disclose your nonpublic personal information to nonaffiliated third parties except as permitted by California law. <br>• We will not disclose your nonpublic personal information to nonaffiliated companies for purposes of jointly marketing financial products or services if you request us not to make this type of disclosure. See the form on the back of this Privacy Notice (entitled "*Important Privacy Choices for Consumers*") to request that we not make these types of disclosures. |

### OPT OUT NOTICE

If you prefer that we *not* disclose nonpublic personal information about you to nonaffiliated third parties, you may **opt out** of those disclosures, that is, *you may direct us not to make those disclosures (other than disclosures permitted by law).* If you wish to opt out of disclosures to nonaffiliated third parties (other than disclosures permitted by law), please detach and complete the Opt Out Response Form below and mail it to: Privacy Notice, 8875 Aero Drive, Suite 200, San Diego, CA 92123.

**Please Note the Following Additional Information About Your Rights:**
• If you have multiple accounts with us, you must indicate your preference to opt out on each account. You will receive a separate Privacy Notice and Opt Out Notice for each account you have with us or our affiliates. You may exercise your right to opt out at any time.
• If you have a joint account, your election to opt out will apply to each person on the account.
• We may share information with third parties in accordance with the terms of this Privacy Notice, except where applicable law requires us to be more restrictive in our sharing.

✂-----------------To Opt Out, Detach and Mail to: Privacy Notice, 8875 Aero Drive, Suite 200, San Diego, CA 92123-------------------

### Opt Out Response Form

☐ **(check box)** Please do not disclose my nonpublic personal information with nonaffiliated third parties unless it is permitted by law.

(Please print)
Name:_____ Address:_____ E-mail Address_____

City:_____ State:_____ Zip:_____ Phone Number: (____)_____-_____

MCM Account Number (Required to Process):_____

MCM-109 (Rev 4/06)

Important Privacy Choice for Consumers
(For use by California Residents Only)

**You have the right to control whether Midland Credit Management, Inc. and its subsidiaries ("MCM," also referenced below as we, our, and us) share some of your personal information.  Please read the following information carefully before you make your choice below.**

### Your Rights

You have the following rights to restrict the sharing of personal and financial information with outside companies that we do business with.  Nothing in this form prohibits the sharing of information necessary for us to follow the law, as permitted by law, or to give you the best service on your accounts with us.  This includes sending you information about some other products or services to the extent permitted by applicable law.

### Your Choice

**Restrict Information Sharing With Other Companies We Do Business With To Provide Financial Products and Services:**  Unless you say "No," we may share personal and financial information about you with outside companies we contract with to provide financial products and services to you to the extent permitted by applicable law.

( ) NO, please do not share personal and financial information with outside companies you contract with to provide financial products and services.

------------------------------------------------------------------------------------------------

### Time Sensitive Reply

You may make your privacy choice at any time.  Your choice marked here will remain unless you state otherwise.   However, if we do not hear from you we may share some of your information with other companies with whom we have contracts to provide products and services.

Name: _____

MCM Account Number(s): _____

Signature: _____

To exercise your choice, please do one of the following: (1) fill out, sign and return the completed form to us via toll-free facsimile at 1-800-306-4443, or (2) call us toll-free at 1-800-825-8131, extension 2980 (you may want to make a copy for your records).

# EXHIBIT B



P.O. Box 939019
San Diego, CA 92193-9019

ADDRESS SERVICE REQUESTED

06-01-2007



MARCIA K MILLER

## Settlement Opportunity

| | |
|---|---|
| Contact Information: | Tel (800) 935-4566 |
| | Fax (800) 306-4443 |
| Hours of Operation: | M-Th 6am - 7pm; Fri 6am - 5pm; |
| | Sat 6am - Noon PST |
| Current Owner: | Midland Funding LLC |
| Original Creditor: | CAPITAL ONE |
| | |
| MCM Account No: | �manspace |
| Current Balance: | $1,554.06 |
| Payment Due Date: | 07-16-2007 |
| Letter Code: | 06865024 |

Dear MARCIA K. MILLER,

Welcome! We have a great offer for our new customers.

Midland Funding LLC recently purchased your CAPITAL ONE account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the servicer of this obligation. As the new servicer of this account, we would like to find a positive resolution to your account.

Midland Credit Management, Inc. (MCM) is currently able to offer you a substantial discount of *50% off* your Current Balance *if we receive payment by 07-16-2007.*

What's In It For You? Once MCM receives your payment of $777.03, we will:
- Notify the credit bureaus that the debt is "Paid". *
- Immediately stop all recovery activity on this account.

To accept this offer, simply detach the Acceptance Certificate below and enclose it with your $777.03 payment in the envelope provided. *Please mail your payment no later than 07-09-2007* in order to receive credit for the 50% off discount by the expiration date 07-16-2007.

If you prefer to speak with one of our Account Managers, please contact us at (800) 935-4566.

**NOTICE: PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

Midland Credit Management, Inc.
(800) 935-4566

*Please tear off and return lower portion with payment in envelope provided*

## Acceptance Certificate

MARCIA K MILLER

| | |
|---|---|
| MCM Account Number: | ▮▮▮▮▮ |
| Current Balance: | $1,554.06 |
| **Amount Due:** | $777.03 |
| | |
| Make Check Payable to: | Midland Credit Management, Inc. |
| **Payment Due Date:** | **07-16-2007** |

mcm
Midland Credit Management, Inc.
Department 8870
Los Angeles, CA 90084-8870



LT1A

**Important Disclosure Information**

> **Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.**

The records associated with the account purchased from CAPITAL ONE reflect that you are obligated on this account, which is in default with a Current Balance of $1,554.06. As the owner of this account, but subject to the rights described below, Midland Funding LLC is entitled to payment of this account. All communication regarding this account should be addressed to MCM and not the previous owner.

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid.

If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment.

If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

If an attorney represents you with regard to this debt, please refer this letter to your attorney. Likewise, if you are involved in an active bankruptcy case, or if this debt has been discharged in a bankruptcy case, please refer this letter to your bankruptcy attorney so that we may be notified.

Please remember, even if you make a payment within 30 days after receiving this notice, you still have the remainder of the 30 days to exercise the rights described above.

\* No credit reporting will occur if the federal reporting period has expired, or we have not previously reported on this account.

---

Please send any correspondence relating to any credit reporting\* of this account to:
MCM CREDIT REPORTING DEPARTMENT, 8875 Aero Drive, Suite 200, San Diego, CA 92123.
PLEASE RETAIN THIS ADDRESS FOR ANY ISSUES RELATING SOLELY TO THE CREDIT REPORTING OF YOUR ACCOUNT.

# PRIVACY NOTICE

Midland Credit Management, Inc. ("MCM," also referenced below as *we, our,* and *us*) is delivering this Privacy Notice to you to generally describe the nonpublic personal and financial information we gather about you as the servicer of your account, and our privacy practices relating to such information and how those policies relate to the protection, use and disclosure of your *nonpublic personal information*. Please carefully read this Privacy Notice and Opt Out Notice.

| What Information Do We Collect? | To Whom Do We Disclose Information? |
|---|---|
| We collect nonpublic personal information about you from the following sources:<br>• Information we receive from you on applications or other forms. This information may include:<br>  ○ Your name<br>  ○ Address<br>  ○ Social security number<br>  ○ Telephone number<br>  ○ Other relevant information that you provide<br>• Information we receive about your account transactions with us, our affiliates, or others including the original creditor. This information may include:<br>  ○ Account balance<br>  ○ Payment history<br>  ○ Account activity<br>  ○ Other customer information<br>• Information we receive from consumer reporting agencies (such as credit scores and history) and other information relating to your creditworthiness | We may disclose nonpublic personal information about our current and former customers to the following types of third parties:<br>• Non-financial companies, such as direct marketers or retailers of consumer products and services<br>• Financial service providers, such as companies engaged in banking, consumer finance, debt purchasing and credit card issuance<br>• Others, such as our affiliated debt purchasers and our parent company<br>• The customer's spouse, if such disclosure is otherwise permitted by law<br><br>We may also disclose nonpublic personal information about our current and former customers to nonaffiliated third parties as required or permitted by law.<br><br>We may disclose all of the information that we collect about our current and former customers, as described to the left under 'What Information Do We Collect?', to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements. |
| **What Information Do We Disclose?**<br>As permitted by law, we may disclose all information that we collect about you, as described above under 'What Information Do We Collect?' | |

**Information Security:** We restrict access to your nonpublic personal information by limiting the access to such information to those employees and contractors who need to know that information to service your account or provide services to you, by requiring companies working for us to protect your information and to agree to use it only to provide the services we ask these companies to perform, and by establishing password requirements and other procedural controls protecting your information from illegal use and disclosure. We maintain physical, electronic and procedural safeguards that comply with applicable laws and regulations to guard your nonpublic personal information.

| Vermont Residents: The following only applies if you are a resident of Vermont. | California Residents:   The following only applies if you are a resident of California. |
|---|---|
| You do not need to return the Opt Out Response Form because:<br>• We will not disclose your nonpublic personal information to nonaffiliated third parties (other than as permitted by law).<br>• Unless otherwise permitted by law, we will not disclose the information that you provide to us or that we obtain from third parties (such as credit bureaus) to our affiliates.<br>• If we disclose information about you to nonaffiliated third parties with whom we have joint marketing agreements, we will disclose only your name, contact information and information about our transactions or experiences with you. | • You do not need to return the Opt Out Response Form because we will not disclose your nonpublic personal information to nonaffiliated third parties except as permitted by California law.<br>• We will not disclose your nonpublic personal information to nonaffiliated companies for purposes of jointly marketing financial products or services if you request us not to make this type of disclosure. See the form on the back of this Privacy Notice (entitled "*Important Privacy Choices for Consumers*") to request that we not make these types of disclosures. |

## OPT OUT NOTICE

If you prefer that we *not* disclose nonpublic personal information about you to nonaffiliated third parties, you may opt out of those disclosures, that is, *you may direct us not to make those disclosures (other than disclosures permitted by law)*. If you wish to opt out of disclosures to nonaffiliated third parties (other than disclosures permitted by law), please detach and complete the Opt Out Response Form below and mail it to:  Privacy Notice, 8875 Aero Drive, Suite 200, San Diego, CA 92123.

**Please Note the Following Additional Information About Your Rights:**
• If you have multiple accounts with us, you must indicate your preference to opt out on each account.  You will receive a separate Privacy Notice and Opt Out Notice for each account you have with us or our affiliates.  You may exercise your right to opt out at any time.
• If you have a joint account, your election to opt out will apply to each person on the account.
• We may share information with third parties in accordance with the terms of this Privacy Notice, except where applicable law requires us to be more restrictive in our sharing.

✂—————————To Opt Out, Detach and Mail to:  Privacy Notice, 8875 Aero Drive, Suite 200, San Diego, CA 92123——————————

### Opt Out Response Form

☐   (check box) Please do not disclose my nonpublic personal information with nonaffiliated third parties unless it is permitted by law..

(Please print)
Name:_____     Address:_____     E-mail Address_____

City:_____     State:_____     Zip:_____     Phone Number:  (_____) _____-_____

MCM Account Number (Required to Process):_____

MCM-109 (Rev 4/06)

Important Privacy Choice for Consumers
(For use by California Residents Only)

**You have the right to control whether Midland Credit Management, Inc. and its subsidiaries ("MCM," also referenced below as we, our, and us) share some of your personal information. Please read the following information carefully before you make your choice below.**

## Your Rights

You have the following rights to restrict the sharing of personal and financial information with outside companies that we do business with. Nothing in this form prohibits the sharing of information necessary for us to follow the law, as permitted by law, or to give you the best service on your accounts with us. This includes sending you information about some other products or services to the extent permitted by applicable law.

## Your Choice

**Restrict Information Sharing With Other Companies We Do Business With To Provide Financial Products and Services:** Unless you say "No," we may share personal and financial information about you with outside companies we contract with to provide financial products and services to you to the extent permitted by applicable law.

( ) NO, please do not share personal and financial information with outside companies you contract with to provide financial products and services.

------------------------------------------------------------------------------------------------

## Time Sensitive Reply

You may make your privacy choice at any time. Your choice marked here will remain unless you state otherwise. However, if we do not hear from you we may share some of your information with other companies with whom we have contracts to provide products and services.

Name: _____

MCM Account Number(s): _____

Signature: _____

To exercise your choice, please do one of the following: (1) fill out, sign and return the completed form to us via toll-free facsimile at 1-800-306-4443, or (2) call us toll-free at 1-800-825-8131, extension 2980 (you may want to make a copy for your records).

# EXHIBIT C

**mcm** P.O. Box 939019
San Diego, CA 92193-9019

ADDRESS SERVICE REQUESTED

06-24-2007



CHARLANE YOWAYS

## *Settlement Opportunity*

| | |
|---|---|
| Contact Information: | Tel (800) 935-4566 |
| | Fax (800) 306-4443 |
| Hours of Operation: | M-Th 6am – 7pm; Fri 6am – 5pm; |
| | Sat 6am – Noon PST |
| Current Owner: | Midland Funding LLC |
| Original Creditor: | FIRST CONSUMER |
| | NATIONAL BANK |

| | |
|---|---|
| MCM Account No: | |
| Current Balance: | $1,273.91 |
| Payment Due Date: | 08-08-2007 |
| Letter Code: | 07005024 |

Dear CHARLANE YOWAYS,

Welcome! We have a great offer for our new customers.

Midland Funding LLC recently purchased your FIRST CONSUMER NATIONAL BANK account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the servicer of this obligation. As the new servicer of this account, we would like to find a positive resolution to your account.

Midland Credit Management, Inc. (MCM) is currently able to offer you a substantial discount of *10% off* your Current Balance *if we receive payment by 08-08-2007.*

What's In It For You? Once MCM receives your payment of $1,146.52, we will:
• Notify the credit bureaus that the debt is "Paid". *
• Immediately stop all recovery activity on this account.

To accept this offer, simply detach the Acceptance Certificate below and enclose it with your $1,146.52 payment in the envelope provided. *Please mail your payment no later than 08-01-2007* in order to receive credit for the 10% off discount by the expiration date 08-08-2007.

If you prefer to speak with one of our Account Managers, please contact us at (800) 935-4566.

**NOTICE: PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

Midland Credit Management, Inc.
(800) 935-4566

*Please tear off and return lower portion with payment in envelope provided*

CHARLANE YOWAYS

## *Acceptance Certificate*

| | |
|---|---|
| MCM Account Number: | |
| Current Balance: | $1,273.91 |
| Amount Due: | $1,146.52 |
| Make Check Payable to: | Midland Credit Management, Inc. |
| Payment Due Date: | 08-08-2007 |

**mcm**
Midland Credit Management, Inc.
Department 8870
Los Angeles, CA 90084-8870

LT1A

24445

## PRIVACY NOTICE

Midland Credit Management, Inc. ("MCM," also referenced below as *we*, *our*, and *us*) is delivering this Privacy Notice to you to generally describe the nonpublic personal and financial information we gather about you as the servicer of your account, and our privacy practices relating to such information and how those policies relate to the protection, use and disclosure of your *nonpublic personal information*. Please carefully read this Privacy Notice and Opt Out Notice.

| **What Information Do We Collect?** | **To Whom Do We Disclose Information?** |
|---|---|
| We collect nonpublic personal information about you from the following sources:<br>• Information we receive from you on applications or other forms. This information may include:<br> ◦ Your name<br> ◦ Address<br> ◦ Social security number<br> ◦ Telephone number<br> ◦ Other relevant information that you provide<br>• Information we receive about your account transactions with us, our affiliates, or others including the original creditor. This information may include:<br> ◦ Account balance<br> ◦ Payment history<br> ◦ Account activity<br> ◦ Other customer information<br>• Information we receive from consumer reporting agencies (such as credit scores and history) and other information relating to your creditworthiness | We may disclose nonpublic personal information about our current and former customers to the following types of third parties:<br>• Non-financial companies, such as direct marketers or retailers of consumer products and services<br>• Financial service providers, such as companies engaged in banking, consumer finance, debt purchasing and credit card issuance<br>• Others, such as our affiliated debt purchasers and our parent company<br>• The customer's spouse, if such disclosure is otherwise permitted by law<br><br>We may also disclose nonpublic personal information about our current and former customers to nonaffiliated third parties as required or permitted by law.<br><br>We may disclose all of the information that we collect about our current and former customers, as described in the left under 'What Information Do We Collect?', to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements. |

**What Information Do We Disclose?**
As permitted by law, we may disclose all information that we collect about you, as described above under 'What Information Do We Collect?'

**Information Security:** We restrict access to your nonpublic personal information by limiting the access to such information to those employees and contractors who need to know that information to service your account or provide services to you, by requiring companies working for us to protect your information and to agree to use it only to provide the services we ask these companies to perform, and by establishing password requirements and other procedural controls protecting your information from illegal use and disclosure. We maintain physical, electronic and procedural safeguards that comply with applicable laws and regulations to guard your nonpublic personal information.

| **Vermont Residents:** The following only applies if you are a resident of Vermont. | **California Residents:** The following only applies if you are a resident of California. |
|---|---|
| You do not need to return the Opt Out Response Form because:<br>• We will not disclose your nonpublic personal information to nonaffiliated third parties (other than as permitted by law).<br>• Unless otherwise permitted by law, we will not disclose the information that you provide to us or that we obtain from third parties (such as credit bureaus) to our affiliates.<br>• If we disclose information about you to nonaffiliated third parties with whom we have joint marketing agreements, we will disclose only your name, contact information and information about our transactions or experiences with you. | You do not need to return the Opt Out Response Form because we will not disclose your nonpublic personal information to nonaff listed third parties except as permitted by California law.<br>• We will not disclose your nonpublic personal information to nonaffiliated companies for purposes of jointly marketing financial products or services if you request us not to make this type of disclosure. See the form on the back of this Privacy Notice (entitled "Important Privacy Choices for Consumers") to request that we not make these types of disclosures. |

### OPT OUT NOTICE
If you prefer that we *not* disclose nonpublic personal information about you to nonaffiliated third parties, *you may opt out of* those disclosures, that is, *you may direct us not to make* those *disclosures (other than disclosures permitted by law)*. If you wish to opt out of disclosures to nonaffiliated third parties (other than disclosures permitted by law), please detach and complete the Opt Out Response Form below and mail it to:  Privacy Notice, 8875 Aero Drive, Suite 200, San Diego, CA 92123.

**Please Note the Following Additional Information About Your Rights:**
• If you have multiple accounts with us, you must indicate your preference to opt out on each account. You will receive a separate Privacy Notice and Opt Out Notice for each account you have with us or our affiliates.  You may exercise your right to opt out at any time.
• If you have a joint account, your election to opt out will apply to each person on the account.
• We may share information with third parties in accordance with the terms of this Privacy Notice, except where applicable law requires us to be more restrictive in our sharing

✂-------------To Opt Out, Detach and Mail to:  Privacy Notice, 8875 Aero Drive, Suite 200, San Diego, CA 92123-----------------

## Opt Out Response Form
☐ (check box) Please do not disclose my nonpublic personal information with nonaffiliated third parties unless it is permitted by law.

(Please print)
Name: _____    Address: _____    E-mail Address _____

City: _____    State: _____    Zip: _____    Phone Number:  (_____)  _____

MCM Account Number (Required to Process): _____

MCM-109 (Rev 4/06)

# EXHIBIT D



P.O. Box 939019
San Diego. CA 92193-9019

ADDRESS SERVICE REQUESTED

**Say "Yes" to MCM!**

Contact Information: Tel (800) 935-1566
                    Fax (800) 306-4443
Hours of Operation: M-Th 6am - 7pm; Fri 6am - 5pm;
                    Sat 6am - Noon PST
Current Owner:      Midland Funding LLC
Original Creditor:  FIRST CONSUMER NATIONAL
                    BANK

08-05-2007



WILLIAM R ANDERSON

MCM Account No:     ▮▮▮▮▮▮
Current Balance:    $3,060.02
Payment Due Date:   09-19-2007
Letter Code:        07268080

Dear WILLIAM R ANDERSON,

Midland Funding LLC recently purchased your FIRST CONSUMER NATIONAL BANK account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the servicer of this obligation.

Do you just want to be free of this debt? Well, now is your opportunity, and it is very easy. Just enclose $3,060.02 in the envelope provided, along with the detachable payment coupon below and this debt will be **PAID!**

### What's In It For You?
- An updated status submitted to the credit bureaus that the debt is "Paid."*
- No further collection activity on this account.
- Free-of-charge, a letter sent to you that confirms that you have no further obligation on this account.

If you need more personal service or have questions, call to speak with one of our Account Managers today at (800) 935-4566.

**PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

Midland Credit Management, Inc.
(800) 935-4566

---

*Please tear off and return lower portion with payment in envelope provided*

| **Thank You!** |
| --- |

WILLIAM R ANDERSON

MCM Account Number:    ▮▮▮▮▮▮
**Amount Due:**        $3,060.02

Make Check Payable to: Midland Credit
                       Management, Inc.

**Payment Due Date:**  09-19-2007



mcm
Midland Credit Management, Inc.
Department 8870
Los Angeles, CA 90084-8870
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



6022                                                          LT1S

**Important Disclosure Information**

> **Please understand this is a communication from a debt collector. This is an attempt to collect a debt.**
> **Any information obtained will be used for that purpose.**

The records associated with the account purchased from FIRST CONSUMER NATIONAL BANK reflect that you are obligated on this account, which is in default with a Current Balance of $3,060.02. As the owner of this account, but subject to the rights described below, Midland Funding LLC is entitled to payment of this account. All communication regarding this account should be addressed to MCM and not the previous owner.

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid.

If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment.

If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

If an attorney represents you with regard to this debt, please refer this letter to your attorney. Likewise, if you are involved in an active bankruptcy case, or if this debt has been discharged in a bankruptcy case, please refer this letter to your bankruptcy attorney so that we may be notified.

Please remember, even if you make a payment within 30 days after receiving this notice, you still have the remainder of the 30 days to exercise the rights described above.

\* No credit reporting will occur if the federal reporting period has expired.

------------------------------

Please send any correspondence relating to any credit reporting\* of this account to:
MCM CREDIT REPORTING DEPARTMENT, 8875 Aero Drive, Suite 200, San Diego, CA 92123.
PLEASE RETAIN THIS ADDRESS FOR ANY ISSUES RELATING SOLELY TO THE CREDIT REPORTING OF
YOUR ACCOUNT.

## PRIVACY NOTICE

Midland Credit Management, Inc. ("MCM," also referenced below as *we, our,* and *us*) is delivering this Privacy Notice to you to generally describe the nonpublic personal and financial information we gather about you as the servicer of your account, and our privacy practices relating to such information and how those policies relate to the protection, use and disclosure of your *nonpublic personal information*. Please carefully read this Privacy Notice and Opt Out Notice.

<table>
<tr><td valign="top">

**What Information Do We Collect?**

We collect nonpublic personal information about you from the following sources:
- Information we receive from you on applications or other forms. This information may include:
  - Your name
  - Address
  - Social security number
  - Telephone number
  - Other relevant information that you provide
- Information we receive about your account transactions with us, our affiliates, or others including the original creditor. This information may include:
  - Account balance
  - Payment history
  - Account activity
  - Other customer information
- Information we receive from consumer reporting agencies (such as credit scores and history) and other information relating to your creditworthiness

**What Information Do We Disclose?**

As permitted by law, we may disclose all information that we collect about you, as described above under 'What Information Do We Collect?'

</td><td valign="top">

**To Whom Do We Disclose Information?**

We may disclose nonpublic personal information about our current and former customers to the following types of third parties:
- Non-financial companies, such as direct marketers or retailers of consumer products and services
- Financial service providers, such as companies engaged in banking, consumer finance, debt purchasing and credit card issuance
- Others, such as our affiliated debt purchasers and our parent company
- The customer's spouse, if such disclosure is otherwise permitted by law

We may also disclose nonpublic personal information about our current and former customers to nonaffiliated third parties as required or permitted by law.

We may disclose all of the information that we collect about our current and former customers, as described to the left under 'What Information Do We Collect?', to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

</td></tr>
</table>

**Information Security:** We restrict access to your nonpublic personal information by limiting the access to such information to those employees and contractors who need to know that information to service your account or provide services to you, by requiring companies working for us to protect your information and to agree to use it only to provide the services we ask these companies to perform, and by establishing password requirements and other procedural controls protecting your information from illegal and disclosure. We maintain physical, electronic and procedural safeguards that comply with applicable laws and regulations to guard your nonpublic personal information.

<table>
<tr><td valign="top">

**Vermont Residents:** The following only applies if you are a resident of Vermont.

You do not need to return the Opt Out Response Form because:
- We will not disclose your nonpublic personal information to nonaffiliated third parties (other than as permitted by law).
- Unless otherwise permitted by law, we will not disclose the information that you provide to us or that we obtain from third parties (such as credit bureaus) to our affiliates.
- If we disclose information about you to nonaffiliated third parties with whom we have joint marketing agreements, we will disclose only your name, contact information and information about our transactions or experiences with you.

</td><td valign="top">

**California Residents:** The following only applies if you are a resident of California.
- You do not need to return the Opt Out Response Form because we will not disclose your nonpublic personal information to nonaffiliated third parties except as permitted by California law.
- We will not disclose your nonpublic personal information to nonaffiliated companies for purposes of jointly marketing financial products or services if you request us not to make this type of disclosure. See the form on the back of this Privacy Notice (entitled *"Important Privacy Choices for Consumers"*) to request that we not make these types of disclosures.

</td></tr>
</table>

### OPT OUT NOTICE

If you prefer that we *not* disclose nonpublic personal information about you to nonaffiliated third parties, you may opt **out** of those disclosures, that is, *you may direct us not to make those disclosures (other than disclosures permitted by law)*. If you wish to opt out of disclosures to nonaffiliated third parties (other than disclosures permitted by law), please detach and complete the Opt Out Response Form below and mail it to: **Privacy Notice, 8875 Aero Drive, Suite 200, San Diego, CA 92123.**

**Please Note the Following Additional Information About Your Rights:**
- If you have multiple accounts with us, you must indicate your preference to opt out on each account. You will receive a separate Privacy Notice and Opt Out Notice for each account you have with us or our affiliates. You may exercise your right to opt out at any time.
- If you have a joint account, your election to opt out will apply to each person on the account.
- We may share information with third parties in accordance with the terms of this Privacy Notice, except where applicable law requires us to be more restrictive in our sharing.

✂-----------------To Opt Out, Detach and Mail to: Privacy Notice, 8875 Aero Drive, Suite 200, San Diego, CA 92123-----------------

### Opt Out Response Form

☐　**(check box)** Please do not disclose my nonpublic personal information with nonaffiliated third parties unless it is permitted by law.

(Please print)
Name:_____    Address:_____    E-mail Address_____

City:_____    State: _____    Zip:_____    Phone Number:  (_____) _____-_____

MCM Account Number (Required to Process):_____

MCM-109 (Rev 4/06)

Important Privacy Choice for Consumers
(For use by California Residents Only)

**You have the right to control whether Midland Credit Management, Inc. and its subsidiaries ("MCM," also referenced below as we, our, and us) share some of your personal information. Please read the following information carefully before you make your choice below.**

<u>Your Rights</u>

You have the following rights to restrict the sharing of personal and financial information with outside companies that we do business with. Nothing in this form prohibits the sharing of information necessary for us to follow the law, as permitted by law, or to give you the best service on your accounts with us. This includes sending you information about some other products or services to the extent permitted by applicable law.

<u>Your Choice</u>

**Restrict Information Sharing With Other Companies We Do Business With To Provide Financial Products and Services:** Unless you say "No," we may share personal and financial information about you with outside companies we contract with to provide financial products and services to you to the extent permitted by applicable law.

(_) NO, please do not share personal and financial information with outside companies you contract with to provide financial products and services.

----------------------------------------------------------------------------------------------------

<u>Time Sensitive Reply</u>

You may make your privacy choice at any time. Your choice marked here will remain unless you state otherwise. However, if we do not hear from you we may share some of your information with other companies with whom we have contracts to provide products and services.

Name: _____

MCM Account Number(s): _____

Signature: _____

> To exercise your choice, please do one of the following: (1) fill out, sign and return the completed form to us via toll-free facsimile at 1-800-306-4443, or (2) call us toll-free at 1-800-825-8131, extension 2980 (you may want to make a copy for your records).

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARCIA K. MILLER,                                     )
WILLIAM MILLER                                        )
CHARLANE YOWAYS-DAWSON, and        )
WILLIAM ANDERSON                                  )
on behalf of themselves and a class,              )
                                                                  )
       Plaintiffs,                                     )
                                                                  )
    vs.                                                        )   08 c 780
                                                                  )   Judge Coar
MIDLAND CREDIT MANAGEMENT,          )   Magistrate Judge Ashman
INC.; MIDLAND FUNDING LLC;                  )
and ENCORE CAPITAL GROUP, INC.,        )
formerly MCM CAPITAL GROUP, INC.,      )
                                                                  )
       Defendants.                                 )

## DECLARATION OF DANIEL A. EDELMAN

      Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

     **1.**     Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, and Michelle R. Teggelaar and 9 associates.

     **2.**     **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions. He is the author of Chapter 6, "Predatory Lending and Potential Class Actions," in Real Estate Litigation (Ill. Inst. For Cont. Legal Educ. 2008), Chapter 4-1, "Truth in Lending Act," in Illinois Causes of Action (Ill. Inst. For Cont. Legal Educ. 2008), ch. 6 of Illinois Mortgage Foreclosure Practice (Ill. Inst. For Cont. Legal Educ.2003); Predatory Lending and Potential Class Actions, ch. 5 of Real Estate Litigation (Ill. Inst. For Cont. Legal Educ.2004); co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Payday Loans: Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection: The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing: Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of Current Trends in

Residential Mortgage Litigation, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); author of Applicability of Illinois Consumer Fraud Act in Favor of Out-of-State Consumers, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of Illinois Consumer Law (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, Attorney Liability Under the Fair Debt Collection Practices Act (Chicago Bar Ass'n 1996); author of The Fair Debt Collection Practices Act: Recent Developments, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994). He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Court for the District of Arizona, United States District Court for the District of Connecticut, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

       3.      **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991. Decisions in which she was involved prior to joining the firm include: Johnson v. Heckler, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D. Ill. 1983); Sanders v. Shephard, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); Maller v. Cohen, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); Wright v. Department of Labor, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); Barron v. Ward, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); City of Chicago v. Leviton, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); Jude v. Morrissey, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983). She is a member of the Northern District of Illinois trial bar.

       4.      **James O. Latturner** is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in Federal Practice Manual for Legal Services Attorneys (M. Masinter, Ed., National Legal Aid and Defender Association 1989); Governmental Tort Immunity in Illinois, 55 Ill.B.J. 29 (1966); Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations, 2 Loy.Consumer L.Rep. 64 (1990), and Illinois Consumer Law (Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme Court. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

       5.      **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** Williams v. Chartwell Financial Services, LTD, 204 F.3d 748 (7th Cir. 2000); Hillenbrand v. Meyer Medical Group, 682 N.E.2d 101

(Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); Bessette v. Avco Fin. Servs., 230 F.3d 439 (1st Cir. 2000); Large v. Conseco Fin. Servicing Co., 292 F.3d 49 (1st Cir. 2002);; Carbajal v. Capital One, 219 F.R.D. 437 (N.D.Ill. 2004); Russo v. B&B Catering, 209 F.Supp.2d 857 (N.D.IL 2002); Garcia v. Village of Bensenville, 2002 U.S.Dist. LEXIS 3803 (N.D.Ill.); Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.Ill 1996).  She is a member of the Northern District of Illinois trial bar.

      **6.**     **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc., 169 F.3d 1057 (7th Cir.1999); Hernandez v. Attention, LLC, 429 F. Supp. 2d 912 (N.D. Ill. 2005); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc., 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999), Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. 2001); Binder v. Atlantic Credit and Finance, Inc., 2007 U.S. Dist. LEXIS 11483 (S.D. Ind. 2007); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc., 1998 WL 299803 (N.D. Ill. 1998).

     **7.**    **Associates**

      **a.**     **Francis R. Greene** is a graduate of Johns Hopkins University (B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). **Reported Cases:** Johnson v. Thomas, 342 Ill. App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); Jolly v. Shapiro & Kreisman, 237 F. Supp. 2d 888 (N.D. Ill. 2002); Parker v. 1-800 Bar None, a Financial Corp., Inc. 2002 WL 215530 (N.D. Ill. 2002); Jiang v. Allstate Ins. Co. (199 F.R.D. 267); Hill v. AMOCO Oil Co. 2003 WL 262424, 2001 WL 293628 (N.D. Ill. 2003); Roquet v. Arthur Anderson LLP 2002 WL 1900768 (N.D. Ill. 2002); White v. Financial Credit, Corp. 2001 WL 1665386 (N.D. Ill.); Ransom v. Gurnee Volkswagen 2001 WL 1241297 (N.D. Ill. 2001) and 2002 WL 449703 (N.D. Ill 2002); Doxie v. Impac Funding Corp. 2002 WL 31045387 (N.D. Ill. 2002); Levin v. Kluever & Platt LLC 2003 WL 22757763 and 2003 WL 22757764 (N.D. Ill. 2003); Pleasant v. Risk Management Alternatives 2003 WL 22175390 (N.D. Ill. 2003); Jenkins v. Mercantile Mortgage 231 F. Supp. 2d 737 (N.D. Ill. 2002); Hobson v. Lincoln Ins. Agency, Inc. 2001 WL 55528, 2001 WL 648958 (N.D. Ill. 2001), Anderson v. Lincoln Ins. Agency 2003 WL 291928, Hobson v. Lincoln Ins. Agency 2003 WL 338161 (N.D. Ill. 2003);  Handy v. Anchor Mortgage Corp., 464 F.3d 760 (7th Cir. 2006). He is a member of the Northern District of Illinois trial bar.

3

**b.**    **Julie Clark** (neé Cobolovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** Qualkenbush v. Harris Trust & Savings Bank 219 F. Supp.2d 935 (N.D. Ill.,2002); Covington-McIntosh v. Mount Glenwood Memory Gardens 2002 WL 31369747 (N.D.I ll.,2002), 2003 WL 22359626 (N.D. Ill. 2003); Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc., 2007 U.S. Dist. LEXIS 84425 (N.D. Ill. Nov. 14, 2007); Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co., No. 1-07-0684, 2007 Ill. App. LEXIS 1194 (Ill. App. 1st Dist. Nov. 13, 2007).

**c.**    **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude*, 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** Clark v. Experian Info. Solutions, Inc., 2004 U.S. Dist. LEXIS 28324 (D.S.C. Jan. 14, 2004); DeFrancesco v. First Horizon Home Loan Corp., 2006 U.S. Dist. LEXIS 80718 (S.D. Ill. Nov. 2, 2006); Jeppesen v. New Century Mortgage Corp., 2006 U.S. Dist. LEXIS 84035 (N.D. Ind. Nov. 17, 2006); Benedia v. Super Fair Cellular, Inc., 2007 U.S. Dist. LEXIS 71911 (N.D. Ill. Sept. 26, 2007).

**d.**    **Thomas E. Soule** is a graduate of Stanford University (B.A., 2000), and the University of Wisconsin Law School (J.D., 2003). **Reported Cases:** Murray v. Sunrise Chevrolet, Inc., 441 F.Supp.2d 940 (N.D. Ill. 2006); Iosello v. Leiblys, Inc., 502 F. Supp.2d 782 (N.D. Ill. 2007); Claffey v. River Oaks Hyundai, Inc., 486 F. Supp.2d 776 (N.D. Ill. 2007).

**e.**    **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** Pietras v. Sentry Ins. Co., 513 F. Supp.2d 983 (N.D. Ill. 2007); Hernandez v. Midland Credit Mgmt., 2007 U.S. Dist. LEXIS 16054 (N.D. Ill. Sept. 25, 2007); Balogun v. Midland Credit Mgmt., 2007 U.S. Dist. LEXIS 74845 (S.D. Ind. Oct. 5, 2007).

**f.**    **Tiffany N. Hardy** is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D.2001).

**g.**    **Zachary Jacobs** is a graduate of the University of South Dakota (B.S. 2002) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D. 2007).

**h.**    **Rupali Shah** is a graduate of the University of Chicago (B.A. 2004) and University of Illinois College of Law (J.D. 2007).

**i.**    **Michael J. Aschenbrener** is a graduate of the University of Minnesota (B.A. 2001) and the Chicago-Kent College of Law, Illinois Institute of Technology (J.D. May 2007).

**8.**    The firm also has 15 legal assistants, as well as other support staff.

**9.**    Since its inception, the firm has recovered more than $500 million for consumers.

**10.**    The types of cases handled by the firm are illustrated by the following:

**11.**    **Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and

4

improper servicing practices.  These include MDL-899, In re Mortgage Escrow Deposit Litigation, and MDL-1604, In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, as well as the Fairbanks mortgage servicing litigation.  Decisions in the firm's mortgage cases include: Christakos v. Intercounty Title Co., 196 F.R.D. 496 (N.D.Ill. 2000); Johnstone v. Bank of America, N.A., 173 F.Supp.2d 809 (N.D.Ill. 2001); Leon v. Washington Mut. Bank, F.A., 164 F.Supp.2d 1034 (N.D.Ill. 2001);  Williamson v. Advanta Mortg. Corp., 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); McDonald v. Washington Mut. Bank, F.A., 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); Metmor Financial, Inc. v. Eighth Judicial District Court, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); GMAC Mtge. Corp. v. Stapleton, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); Leff v. Olympic Fed. S. & L. Ass'n, 1986 WL 10636 (N.D.Ill. 1986); Aitken v. Fleet Mtge. Corp., 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); Poindexter v. National Mtge. Corp., 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); Sanders v. Lincoln Service Corp., 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); Robinson v. Empire of America Realty Credit Corp., 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); In re Mortgage Escrow Deposit Litigation, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); Greenberg v. Republic Federal S. & L. Ass'n, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

      12.     The recoveries in the escrow overcharge cases alone are over $250 million.  Leff was the seminal case on mortgage escrow overcharges.

      13.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

      14.     **Bankruptcy:**  The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric.  Conley v. Sears, Roebuck, 1:97cv11149 (D.Mass); Fisher  v. Lechmere Inc., 1:97cv3065, (N.D.Ill.).  These cases were settled and resulted in recovery for nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment.  Bessette v. Avco Financial Services, 230 F.3d 439 (1st Cir. 2000).

      15.     **Automobile sales and financing practices:**  The firm has brought many cases challenging practices relating to automobile sales and financing, including:

      **a.**     Hidden finance charges resulting from pass-on of discounts on auto purchases.  Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

      **b.**     Misrepresentation of amounts disbursed for extended warranties. Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); Slawson v. Currie Motors Lincoln Mercury, Inc., 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); Cirone-Shadow v. Union Nissan, Inc., 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); Chandler v. Southwest Jeep-Eagle, Inc., 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8, 1995); Shields v. Lefta, Inc., 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

**c.**     Spot delivery.  <u>Janikowski v. Lynch Ford, Inc.</u>, 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); <u>Diaz v. Westgate Lincoln Mercury, Inc.</u>, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. 1994);  <u>Grimaldi v. Webb</u>, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

**d.**     Force placed insurance.  <u>Bermudez v. First of America Bank Champion, N.A.</u>, 860 F.Supp. 580 (N.D.Ill. 1994); <u>Travis v. Boulevard Bank</u>, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); <u>Moore v. Fidelity Financial Services, Inc.</u>, 884 F. Supp. 288 (N.D.Ill. 1995).

**e.**     Improper obligation of cosigners.  <u>Lee v. Nationwide Cassell</u>, 174 Ill.2d 540, 675 N.E.2d 599 (1996); <u>Taylor v. Trans Acceptance Corp.</u>, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

**f.**     Evasion of FTC holder rule.  <u>Brown v. LaSalle Northwest Nat'l Bank</u>, 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

**16.**     These cases also had a substantial effect on industry practices.  The warranty cases, such as <u>Grimaldi</u>, <u>Gibson</u>, <u>Slawson</u>, <u>Cirone-Shadow</u>, <u>Chandler</u>, and <u>Shields</u>, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

**17.     Predatory lending practices:**  The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, mostly as class actions. <u>Livingston v. Fast Cash USA, Inc.</u>, 753 N.E.2d 572 (Ind. Sup. Ct. 2001);  <u>Williams v. Chartwell Fin. Servs.</u>, 204 F.3d 748 (7th Cir. 2000); <u>Parker v. 1-800 Bar None, a Financial Corp., Inc.</u>, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb 12, 2002); <u>Gilkey v. Central Clearing Co.</u>, 202 F.R.D. 515 (E.D.Mich. 2001);  <u>Van Jackson v. Check 'N Go of Ill., Inc.</u>, 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp. 2d 1085 (N.D.Ill. 2000); <u>Henry v. Cash Today, Inc.</u>, 199 F.R.D. 566 (S.D.Tex. 2000); <u>Donnelly v. Illini Cash Advance, Inc.</u>, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); <u>Jones v. Kunin</u>, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); <u>Davis v. Cash for Payday</u>, 193 F.R.D. 518 (N.D.Ill. 2000); <u>Reese v. Hammer Fin. Corp.</u>, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677  (N.D.Ill., Nov. 29, 1999); <u>Pinkett v. Moolah Loan Co.</u>, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); <u>Gutierrez v. Devon Fin. Servs.</u>, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); <u>Vance v. National Benefit Ass'n</u>, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

**18.     Other consumer credit issues:**  The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

**a.**     Phony nonfiling insurance.  <u>Edwards v. Your Credit Inc.</u>, 148 F.3d 427, 1998 U.S. App. LEXIS 16818 (5th Cir. 1998); <u>Adams v. Plaza Finance Co.</u>, 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); <u>Johnson v. Aronson Furniture Co.</u>, 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

**b.**     The McCarran Ferguson Act exemption.  <u>Autry v. Northwest</u>

6

Premium Services, Inc., 144 F.3d 1037, 1998 U.S. App. LEXIS 9564 (7th Cir. 1998).

> **c.** Loan flipping. Emery v. American General, 71 F.3d 1343 (7th Cir. 1995). Emery limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

> **d.** Home improvement financing practices. Fidelity Financial Services, Inc. v. Hicks, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; Heastie v. Community Bank of Greater Peoria, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990). Heastie granted certification of a class of over 6,000 in a home improvement fraud case.

> **e.** Arbitration clauses. Wrightson v. ITT Financial Services, 617 So.2d 334 (Fla. 1st DCA 1993).

> **f.** Insurance packing. Elliott v. ITT Corp., 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

> **19.** **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include Lundquist v. Security Pacific Automotive Financial Services Corp., Civ. No. 5:91-754 (TGFD) (D.Conn.), aff'd, 993 F.2d 11 (2d Cir. 1993); Kedziora v. Citicorp Nat'l Services, Inc., 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); Johnson v. Steven Sims Subaru and Subaru Leasing, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); McCarthy v. PNC Credit Corp., 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); Kinsella v. Midland Credit Mgmt., Inc., 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); Highsmith v. Chrysler Credit Corp., 18 F.3d 434 (7th Cir. 1994); Black v. Mitsubishi Motors Credit of America, Inc., 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); Simon v. World Omni Leasing Inc., 146 F.R.D. 197 (S.D.Ala. 1992). Settlements in such cases include Shepherd v. Volvo Finance North America, Inc., 1-93-CV-971 (N.D.Ga.)($8 million benefit); McCarthy v. PNC Credit Corp., 291 CV 00854 PCD (D.Conn.); Lynch Leasing Co. v. Moore, 90 CH 876 (Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation purposes, partial summary judgment was entered, and case was then settled); Blank v. Nissan Motor Acceptance Corp., 91 L 8516 (Circuit Court of Cook County, Illinois); Mortimer v. Toyota Motor Credit Co., 91 L 18043 (Circuit Court of Cook County, Illinois); Duffy v. Security Pacific Automotive Financial Services, Inc., 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

> **20.** Lundquist and Highsmith are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the Lundquist case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

> **21.** **Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include: Jenkins v. Heintz, 25 F.3d 536 (7th Cir. 1994), aff'd 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); Johnson v. Revenue Management Corp., 169 F.3d 1057, 1999 U.S. App. LEXIS 3142 (7th Cir.

1999); Keele v. Wexler & Wexler, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996)
(class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998
U.S.App. LEXIS 15029 (7th Cir. 1998); Mace v. Van Ru Credit Corp., 109 F.3d 338, 1997
U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); Maguire v. Citicorp Retail Services, Inc., 147
F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); Young v. Citicorp Retail Services, Inc.,
1998 U.S.App. LEXIS 20268 (2d Cir. 1998); Charles v. Lundgren & Assocs., P.C., 119 F.3d
739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996),
aff'g Avila v. Van Ru Credit Corp., 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later
opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist.
LEXIS 17117 (N.D.Ill., Nov. 14, 1995); Tolentino v. Friedman, 833 F.Supp. 697 (N.D.Ill.
1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); Blakemore v. Pekay, 895
F.Supp.972 (N.D.Ill. 1995); Oglesby v. Rotche, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4,
1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); Laws v. Cheslock,
1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999);Davis v. Commercial Check Control, Inc.,
1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); Hoffman v. Partners in Collections, Inc.,
1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); Vaughn v. CSC Credit Services, Inc.,
1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358
(N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994);
Taylor v. Fink, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 1995
U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995).
Settlements in such cases include Boddie v. Meyer, 93 C 2975 (N.D.Ill.); and Cramer v. First of
America Bank Corporation, 93 C 3189 (N.D.Ill.).

     **22.**     Jenkins v. Heintz is a leading decision regarding the liability of attorneys
under the Fair Debt Collection Practices Act.  I argued it before the Supreme Court and Seventh
Circuit.  Avila v. Rubin is a leading decision on phony "attorney letters."

     **23.**     **Fair Credit Reporting Act:** The firm has filed numerous cases under the
Fair Credit Reporting Act, primarily as class actions.  One line of cases alleges that lenders and
automotive dealers, among others, improperly accessed consumers' credit information, without
their consent and without having a purpose for doing so permitted by the FCRA.  Important
decisions in this area include: Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004), Murray v.
GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006); Perry v. First National Bank, 459 F.3d 816
(7th Cir. 2006); Murray v. Sunrise Chevrolet, Inc., 441 F. Supp.2d 940 (N.D. Ill. 2006);Shellman
v. Countrywide Home Loans, Inc., 1:05-CV-234-TS, 2007 U.S. Dist. LEXIS 27491 (N.D.Ind.,
April 12, 2007); In re Ocean Bank, 06  C 3515, 2007 U.S. Dist. LEXIS 28973 (N.D.Ill., March
16, 2007), later opinion,  2007 U.S. Dist. LEXIS 29443 (N.D. Ill., Apr. 9, 2007); Asbury v.
People's Choice Home Loan, Inc., 05 C 5483, 2007 U.S. Dist. LEXIS 17654 (N.D.Ill., March 12,
2007); Claffey v. River Oaks Hyundai, Inc., 238 F.R.D. 464 (N.D.Ill. 2006); Murray v. IndyMac
Bank, FSB, 461 F.Supp.2d 645 (N.D.Ill. 2006); Kudlicki v. Capital One Auto Finance, Inc., 2006
U.S. Dist. LEXIS 81103 (N.D. Ill., Nov. 2, 2006); Thomas v. Capital One Auto Finance, Inc.,
2006 U.S. Dist. LEXIS 81358 (N.D. Ill., Oct. 24, 2006); Pavone v. Aegis Lending Corp., 2006
U.S. Dist. LEXIS 62157 (N.D. Ill., Aug. 31, 2006); Murray v. E*Trade Financial Corp., 2006
U.S. Dist. LEXIS 53945 (N.D. Ill., July 19, 2006); Bonner v. Home 123 Corp., 2006 U.S. Dist.
LEXIS 37922 (N.D. Ind., May 25, 2006); Murray v. Sunrise Chevrolet , Inc., 2006 U.S. Dist.
LEXIS 19626 (N.D. Ill., Mar. 30, 2006); and Murray v. Finance America, LLC, 2006 U.S. Dist.
LEXIS 7349 (N.D. Ill., Jan 5, 2006).  More than 15 such cases have been settled on a classwide
basis.

     **24.**     **Class action procedure:**  Important decisions include Crawford v.
Equifax Payment Services, Inc., 201 F.3d 877 (7th Cir. 2000); Blair v. Equifax Check Services,

Inc., 181 F.3d 832 (7th Cir. 1999); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); and Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

25.     **Landlord-tenant:** The firm has brought a number of class actions against landlords for various matters including failing to pay interest on security deposits or commingling security deposits, breach of the warranty of habitability, improper late charges, and various violations of the CRLTO. Reported decisions include: Wang v. Williams,343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); Onni v. Apartment Management and Investment Co., 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2d Dist. 2003) (case challenging improper late charges, which later settled on a class basis for $200,000); Dickson v. West Koke Mill Village P'Ship, 329 Ill.App.3d 341 (4th Dist. 2002). Illustrative cases include: Hale v. East Lake Management & Developmental Corp., et al., 00 CH 16139, in the Cook County Circuit Court, Judge Madden granted class certification for tenants who had not been paid their security deposit interest after the end of each twelve month rental period.  The East Lake case later settled on a classwide basis for over $400,000.

26.     Some of the other reported decisions in our cases include:  Elder v. Coronet Ins. Co., 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); Smith v. Keycorp Mtge., Inc., 151 Bankr. 870 (N.D.Ill. 1992); Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); Armstrong v. Edelson, 718 F.Supp. 1372 (N.D.Ill. 1989); Newman v. 1st 1440 Investment, Inc., 1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); Mountain States Tel. & Tel. Co. v. District Court, 778 P.2d 667 (Colo. 1989); Disher v. Fulgoni, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st Dist. 1984); Harman v. Lyphomed, Inc., 122 F.R.D. 522 (N.D.Ill. 1988); Haslam v. Lefta, Inc., 1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); Source One Mortgage Services Corp. v. Jones, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

27.     Gordon v. Boden is the first decision approving "fluid recovery" in an Illinois class action.  Elder v. Coronet Insurance held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

_____
Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

# EXHIBIT F

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 50042 | **DATE** | 1/22/2008 |
| **CASE TITLE** | | Ruth, et al. v. Triumph P'ships, LLC, et al. | |

**DOCKET ENTRY TEXT:**

For the reasons stated below both defendants' and plaintiffs' motions for summary judgment are denied.

■ [ For further details see text below.]

Docketing to mail notices.

## STATEMENT

### I. BACKGROUND

On March 3, 2006, plaintiffs, Alice Ruth and Marylou Hahn, individually and on behalf of a class, filed a complaint against defendants, Triumph Partnerships, LLC (TPLLC) and Allied International Credit Corporation (Allied), alleging that defendants violated § 1692e of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e. Prior to filing this action, plaintiffs incurred debts to Household Bank for personal and household purposes, and have not paid those debts. TPLLC, a company that purchases delinquent debt from creditors, purchased plaintiffs' delinquent debts and hired Allied to collect those debts. In January 2006, plaintiffs received a copy of a collection letter with a copy of a privacy notice (notice).[1] The notice stated that TPLLC had the right to share nonpublic personal information about plaintiffs, gathered in the course of debt collection, with certain nonaffiliated third parties, unless plaintiffs opted out in writing. This right to disclose information was not conditioned upon plaintiffs' approval.

Plaintiffs allege that the notice violates the FDCPA because it threatens actions prohibited by the Act, specifically § 1692c, which prohibits debt collectors from communicating with certain third parties "in connection with the collection of any debt," and §1692d, which prohibits debt collectors from publishing a list of persons who have refused to pay debt. See 15 U.S.C. §§ 1692c(b), 1692d, 1692e. Plaintiffs have filed a motion for summary judgment on the issue of liability and defendants have filed a cross-motion for summary judgment.

### II. DISCUSSION

Summary judgment is proper if the evidence on record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 489-90 (7th Cir. 2007). In considering cross-motions for summary judgment, the court views all facts and draws all reasonable inferences "in a light most favorable to the party against whom the motion under consideration is made." Schneider v. Sentry Group Long Term Disability Plan, 422 F.3d 621, 626 (7th Cir. 2005)

Case 3:06-cv-50042    Document 81    Filed 01/22/2008    Page 2 of 9

## STATEMENT

(quotation marks omitted). "The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, 335 F.3d 643, 647 (7th Cir. 2003). "Parties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." Id. at 648.

In an FDCPA case, when a violation "is so 'clearly' evident on the face of a collection letter, a court may award summary judgment to the FDCPA plaintiff." Durkin v. Equifax Check Servs., Inc., 406 F.3d 410, 415 (7th Cir. 2005). "On the other hand, mere speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment motion." Id. Rather, to avoid summary judgment for defendant "the plaintiff must show that the challenged language of the letters unacceptably increases the level of confusion." Williams v. OSI Educ. Servs., Inc., 505 F.3d 675, 678 (7th Cir. 2007) (quotation marks omitted). "[A]bsent a showing that the face of the letter will precipitate such a level of confusion, the plaintiff must come forward with evidence beyond the letter and beyond her own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." Id. (quotation marks and alteration omitted).

Section 1692e of the FDCPA states,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ***
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> ***
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(5), (10). Plaintiffs argue that because the privacy notice states that defendants could take actions expressly prohibited by §§ 1692c and 1692d, they violated subsections (5) and (10) of § 1692e. Defendants first respond that TPLLC is a "creditor" and not a "debt-collector" and is therefore, not subject to the FDCPA. Second, defendants argue that even if TPLLC is subject to the FDCPA, neither TPLLC nor Allied violated §1692e of the FDCPA. Finally, defendants argue that even if they did violate the FDCPA, they are absolved from liability under the FDCPA's bona fide error defense, 15 U.S.C. § 1692k.

### A. Application of the FDCPA to TPLLC

TPLLC argues that it cannot violate the FDCPA because it is a "creditor" not a "debt collector." The FDCPA defines a "creditor" as:

> [A]ny person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

## STATEMENT

15 U.S.C. § 1692a(4). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Plaintiffs assert that TPLLC fits into the latter portion of the definition of a debt collector.

The Seventh Circuit has explained that in the case of one who acquires the debt from another the FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee . . . ." Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003). The Schlosser court reasoned that this interpretation supports the purpose of the FDCPA because one who acquires the debt and continues to service it is acting much like the original creditor, whereas, one who simply acquires the debt for collection is acting more like a debt collector. Id. The Seventh Circuit also has held that "[t]o be a 'debt collector' under the FDCPA entails engaging in some affirmative conduct with regard to collecting a debt, as evidenced by the statute's use of active verbs." McCready v. eBay, Inc., 453 F.3d 882, 889 (7th Cir. 2006). The inquiry as to whether a person is a debt collector is not specific to his actions in a specific case, but rather depends on whether he regularly collects debts. Schutz v. Arrow Fin. Servs., LLC, 465 F. Supp. 2d 872, 875 (N.D. Ill. 2006).

In this case, TPLLC admits that it engages in the business of purchasing delinquent debts from creditors in order to collect the debts it purchases. Therefore, the only inquiry remaining as to whether TPLLC is a debt collector is whether it regularly engages in some affirmative conduct in regard to collecting debts. TPLLC asserts that it has never collected or attempted to collect debts owed to others, but rather retains third party debt collection agencies to collect those debts. TPLLC admits, however, that it has sent 10,000 debts to attorneys for the filing of collection, and has filed over 1000 collection lawsuits within a short period of time. Plaintiffs claim that this activity constitutes extensive debt collection activity by TPLLC. TPLLC responds that because it hires law firms to file these suits, it is the law firms as opposed to TPLLC that are the debt collectors.

In Heintz v. Jenkins, 514 U.S. 291, 294 (1995), the Supreme Court found that the FDCPA applies to lawyers involved in litigation because legal proceedings are one way to attempt to collect consumer debts. The Supreme Court cited Black's Law Dictionary for the proposition that "[t]o collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings." Id. (emphasis added). Although TPLLC is correct that law firms and lawyers can be debt collectors due to their own conduct, id., this does not mean the filing of suit against debtors by TPLCC is not an action by TPLCC. See Wade v. Soo Line R.R. Corp., 500 F.3d 559, 564 (7th Cir. 2007) ("Attorneys' actions are imputed to their clients"); United States v. Di Mucci, 879 F.2d 1488, 1496 (7th Cir. 1989) ("[A]n attorney's conduct must be imputed to his client in any context"). The filing of a complaint in a legal action for collection is an act by the client to collect a debt. Moreover, neither party has directed the court to controlling authority reaching the issue of whether an entity that does not itself communicate with a debtor, but refers the debtor's account to an attorney to take legal action for collection of a debt is "attempting to collect a debt." However, it is logical to conclude that a debt collector's referral of accounts to a legal service in order to file suit for the collection of a debt would also be affirmative action toward collecting a debt. See Munoz v. Pipestone Fin., LLC, 397 F. Supp. 2d 1129, 1133 (D. Minn 2005). Therefore, because TPLLC engages in regularly attempting to collect debts owed or due or asserted to be owed or due another, TPLLC is a debt collector pursuant to section 1692a(6).

### B. Violation of § 1692e

Defendants next argue that they did not violate the FDCPA because the notice at issue was not a communication in connection with the collection of a debt, and because the notice does not threaten to take any action that cannot legally be taken. "Practices purporting to violate the Act must be viewed from the objective standard of an 'unsophisticated debtor.'" Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1060 (7th Cir. 2000); see also Buckley v. Bass & Assocs., 249 F.3d 678, 681 (7th Cir. 2001) (applying the unsophisticated debtor standard to whether a communication is considered to be in connection with the collection

## STATEMENT

of debt). The "uneducated debtor possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." Pettit, 211 F.3d at 1060. "Furthermore, while our unwary debtor may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion." Id. However, "the standard is low, close to the bottom of the sophistication meter." Avila v. Rubin, 84 F.3d 222, 226 (7th Cir. 1996) Accordingly, a party violates § 1692e if an 'unsophisticated debtor' who read a given notice reads into the message oppressiveness, falsehood or threat. With this standard in mind, the court turns to the letter at hand.

### 1. Nature of the Communication

Defendants claim that the notice is not a communication in connection with the collection of a debt because the notice itself, although enclosed in the same envelope as the collection letter, does not convey any information regarding the plaintiffs' debts and provides information from TPLLC pursuant to the Gramm-Leach-Briley Act (GLBA), 15 U.S.C. § 6803. However, viewed by the above standard, Allied's claim that the notice is not connected with the collection of a debt is unavailing.

There are several facts outside the notice itself that suggest the notice is part of a communication in connection with the collection of a debt. First, the notice was mailed in the same envelope as a debt collection letter, which explicitly states, in bold, that "[t]his is an attempt to collect a debt" and that "[a]ny information obtained will be used for that purpose." Also, it is difficult to decipher that the two documents are sent by separate entities. The notice itself states that it was sent on behalf of both TPLLC and Triumph Asset Services. Moreover, the collection letter, although signed by Triumph Asset Services (Allied), reads as if it were written by TPLLC. For example, it states, "As the new owner of this account, we have authorized TAS to work with you to find a positive resolution to this outstanding debt." (Emphasis added.). The notice from TPLLC similarly states "we may collect and/or share all the information we obtain in servicing your account." In both the letter and the notice, TPLLC is referred to in the first person making it difficult for a consumer to separate the intent of the letter from the intent of the notice. Finally, to add additional confusion, both the first page of the collections letter and the notice contain an identical symbol of the letter "T". On the collection letter the "T" is underscored with the words "Triumph Asset Services", and on the notice the "T" is underscored by the word "Triumph".

The combination of the collection letter, informing the debtor that any information obtained would be used to collect a debt, the use of the first person in relation to TPLLC on both documents, and the identical "T" on both documents, could reasonably suggest the notice was connected to the collection of the debt referenced in the collection letter. "This is especially so when the Collection Letter and the Notice were the only two documents enclosed in a single mailing." Hernandez v. Midland Credit Mgmt., Inc., No. 04 C 7844, 2007 WL 2874059, at *10 (N.D. Ill. Sept. 25, 2007).[2] Therefore, defendants have not shown that there is no genuine issue of material fact as to whether the notice was a communication in connection with the collection of a debt. However, at the same time, while the above facts may lead to the reasonable inference by the trier of fact that the notice was a communication in connection with the collection of a debt, this court cannot say that the facts are so strong that summary judgment for plaintiffs is merited.

Defendants also argue that § 1692g(e) prohibits a GLBA notice from being treated as a communication in connection with the collection of debt. However, the plain language of the statute precludes this conclusion.

Section 1692g(e) states:

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986, chapter 94 of this title [15 U.S.C.A.

## STATEMENT

§ 6801 et seq,], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

15 U.S.C. § 1692g(e). First, the statute states that such notice shall not be treated as an <u>initial</u> communication in connection with debt collection. In this case, the issue is not whether the notice is the "initial" communication, but rather whether it is any type of communication in connection with debt collection. More importantly, § 1692g(e) specifically limits its application to "this section." Section 1692g addresses the validation of the debts, and requires that after an initial communication, a debt collector send a written notice to the debtor containing certain information about the debt.   This case concerns § 1692e. Section 1692e addresses any misleading representation a debtor makes in connection with the collection of a debt. The plain language of § 1692g(e) indicates that it is not applicable to § 1692e. Finally, even assuming § 1692g(e) was applicable to § 1692e, § 1692g(e) applies only to a notice "which does not relate to the collection of a debt." As discussed above, several facts suggest the notice was related to the collection of a debt.  For these reasons, the court does not find § 1692g(e) applicable in this case.

### 2. Specific Violations of § 1692e

Defendants argue that even if the statements in the notice could be construed as made in connection with the collection of the debt, plaintiff s have not shown that the notice violates § 1692e because the statement itself did not threaten to take any illegal or unintended action or make any false representations in order to collect debts or obtain consumer information, and because the notice itself was TPLLC's attempt to comply with the GLBA.

Section 1692c, to which, as debt collectors, TPLLP and Allied would be subject, states:

b) Communication with third parties

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, <u>in connection with the collection of any debt</u>, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. §1692c (emphasis added). The language of the notice states:

To the extent permitted by law, we may collect and/or share all the information we obtain in servicing your account . . . .We may share information about you . . . to the following third parties: Non-financial companies, such as direct marketers or retailers[,] financial service companies (like banks, mortgage lenders, and organizations with which we have joint marketing agreements) . . . . Non-financial companies, such as direct marketers or retailers as outlined below in the OPT-OUT NOTICE section, you may tell us not to share information about you with outside companies.

Plaintiffs offer the evidence of the collection letter, and the fact it was sent in the same envelope as the

Case 3:06-cv-50042    Document 81    Filed 01/22/2008    Page 6 of 9

## STATEMENT

notice to demonstrate how the notice threatened to take action that could not legally be taken. In reviewing the language of the notice in relation to § 1692c, this court agrees with plaintiffs that, when viewed in connection with the language of the collection letter, to an unsophisticated consumer this language could be perceived as a threat to violate § 1692c. First, the collection letter immediately preceding the notice states twice, in bold, that any information obtained will be used for the purpose of collecting the debt. This combination suggests to an unsophisticated reader that TPLLC or Allied could communicate with third parties, other than those permitted, in connection with the collection of a debt. Moreover, the opt-out provisions of the notice, in combination with the letter, could suggest to a reader that he or she must "opt-out" of the sharing of information in connection with the collection of any debt, rather than affirmatively allow TPLLP and Allied to communicate such information. Thus, although the notice does not expressly purport to contain any information about plaintiffs' rights under the FDCPA, the notice, in combination with the letter, could possibly lead a reasonable, unsophisticated consumer to believe that personal information might be disclosed in connection with Allied's attempt to collect the debt referenced in the collection letter. See Hernandez, No. 04 C 7844, 2007 WL 2874059, at *10.

Allied next argues that because the notice specifically stated that TPLLC collects and shares information with third parties "[to] the extent permitted by law" it could not have been threatening to violate either §§ 1692e(5) or (10). However, again, "practices purporting to violate the Act must be viewed from the objective standard of an 'unsophisticated debtor.'" Pettit, 211 F.3d at 1060. The phrase "to the extent permitted by law" suggests that the action is to some extent permitted. See Gionis v. Javitch, Block, Rathbone, LLP, 238 Fed. Appx. 24, 28 (6th Cir. 2007). Although Allied is correct that it is not barred from contacting the third parties listed in all circumstances, by stating twice in the letter attached to the notice that "any information obtained" would be used for the purpose of attempting to collect a debt, the notice could be read to suggest, at least to an unsophisticated debtor, that this would be the purpose of a communication with the third parties listed. Because § 1692c would not allow a debt collector to communicate, without express permission, with many of the named third parties in "connection with the collection of a debt," the notice, taken in light of the letter, suggests an activity that would not be permitted by the law. As a result, the phrase "[to] the extent permitted by law" does not remedy the potentially misleading nature of the statement. See id.; Chapman v. Worldwide Asset Mgmt, L.L.C., No. 04 C 7625, 2005 WL 818880, at *4 n.3 (N.D. Ill. April 6, 2005).

Finally, defendants' argument that the notice was required by the GLBA is more relevant to defendants' assertion of the "bona fide error" defense, which the court discusses in more detail below. Moreover, in their reply brief, defendants clarify their position stating they do not claim a conflict between the applicable provisions of FDCPA and the GLBA, but that viewing its notice as an attempt to comply with the GLBA shows that the notice was not related to the collection of the debt. However, as this court already has discussed above why the notice could be seen as connected to the collection of a debt, it need not further address this argument. See Chapman, No. 04 C 7625, 2005 WL 818880, at *4 ("The FDCPA pertains specifically to communications related to debt collecting; the GLB does not. There is no basis for holding that the previously discussed provisions of the FDCPA are inapplicable to the privacy policy notice sent by defendants.").[3]

Although the evidence offered by plaintiffs is enough to overcome their burden in regard to defendants' motion for summary judgment, the notice alone does not show on its face that judgment for plaintiffs is merited as a matter of law.[4] The notice taken by itself states only that the defendants will "share" information with third parties, not that these communications would be in connection with the collection of any debt. Thus, taking the evidence in the light most favorable to defendants, as this court must, an unsophisticated debtor could conclude the notice was separate from the letter, and would not find that the notice, on its own, suggests any illegal activity. The question of whether a statement is deceptive or misleading is a matter of fact, rather than law. Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 776 (7th Cir. 2007); Smith v. First Nat'l Collection Bureau, Inc., No. 06 C 4742, 2007 WL 4365335, at *2 (N.D. Ill. Dec. 10, 2007); see also Taylor v. Cavalry Inv., L.L.C., 365 F.3d 572, 575 (7th Cir. 2004). This court cannot say that the violation is so clear on the face of the

Case 3:06-cv-50042    Document 81    Filed 01/22/2008    Page 7 of 9

## STATEMENT

notice that plaintiffs should be awarded summary judgment. Because there is a genuine factual question as to whether the unsophisticated consumer would view the materials as plaintiffs claim, or as defendants claim, the issue of how the unsophisticated consumer would interpret it is for the trier of fact and may not be resolved on summary judgment. Therefore, plaintiffs' motion for summary judgment is denied.

### 3. Representation or Means Used by Allied

Allied individually asserts it did not violate the FDCPA because the notice at issue was a communication from TPLLC, not Allied. However, the notice itself states it is sent on behalf of TPLLC and Triumph Asset Services, i.e. Allied. Moreover, Allied admits that it sent both the collection letter and the copy of privacy notice, and admits that it sent these together. Even assuming the notice was drafted by TPLLC and sent by Allied on its behalf, the notice is also arguably part of the "means" used by Allied because it was contained in an envelope with the debt collection letter. Thus, this court rejects the notion that the notice is solely a "representation and means" by TPLLC.

### C. Bona Fide Error Defense

Section 1692k(c) of the FDCPA affords debt collectors an affirmative defense, called the bona fide error defense, in that, a debt collector may not be held liable under the FDCPA "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Thus, to qualify for a bona fide error defense, defendants "must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error . . . ; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 537 (7th Cir. 2005). Because defendants bear the burden of persuasion on this issue, in order for defendants to prevail on this issue for summary judgment, it must support its motion with credible evidence to show that, even in the absence of an adequate response by the nonmovant, it is entitled to judgment as a matter of law. Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1368 (Fed. Cir. 2006); Arnett v. Myers, 281 F.3d 552, 562 (6th Cir. 2002); see also Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting) (The moving party "must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.").

Plaintiffs do not contest that defendants' alleged violation is unintentional, but rather assert that defendants fail to show that they maintained procedures that were reasonably adapted to avoid such an error. However, although both parties focus primarily on step three, neither party has specifically identified the bona fide error from which the FDCPA violation resulted. The error and the violation are not one in the same. Kort, 394 F.3d at 537. This makes it difficult for this court to assess if the procedures were "adapted to avoid any such error." However, for the purpose of reviewing step three, this court assumes the error was a legal one, in which the defendants caused the notice to suggest that third parties could be contacted in connection with the collection of a debt by including the privacy notice in the envelope with the debt collection letter, by failing to clearly identify the privacy notice as a separate document, and by using the chosen language in the privacy notice.

Section 1692k(c) calls first, for the debt collector to "maintain" procedures to avoid such error, and second, for these procedures to be "reasonably adapted" to avoid such error. Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006). Defendants offer evidence that in order to ensure compliance Allied trains employees about the FDCPA and the GLBA, reviews collection letters for legal compliance, requires contracting parties to agree to comply with the FDCPA and GLBA, employs a director of compliance and VP of compliance, maintains multiple layers of compliance review, and provides quarterly FDCPA and GLBA training, testing and certification of managers and collectors. Specifically, defendants present evidence that as part of its compliance

## STATEMENT

program, Allied has its collection letters reviewed for legal compliance by attorneys at the American Collection Associations Membership Attorney Program. Defendants also submit a flow chart of the processes it takes to review a collection letter, entitled "Letter Creation."

Although defendants present ample evidence of Allied's procedures to avoid legal errors in collection letters, the primary document at issue in this case is the privacy notice.    Despite the specific procedures for review of collection letters outlined by Allied, the evidence is not clear that these procedures were used on privacy notices.    In her deposition, Laurie McNall, Vice-President of Project Management and Compliance at Allied Global Holdings Inc., outlined many of the procedures in place at Allied.    She initially states that she saw "Exhibit 1," the three-page document including the privacy notice, two years earlier in her duties with compliance. She then outlines the process for reviewing "collection letters." She does not separate the notice from the letter. However, despite this suggestion that privacy notices could have been reviewed with collection letters through the procedures outline above, later in her deposition McNall states she had nothing to do with composing or approving the text of the notice. She also states that the letter is TPLLC's document and is separate from Allied's collection letter.

In his deposition, Rick Arko, Senior Vice President of TPLLC, states he selected the privacy notice from samples he obtained from a letter vendor, reviewed it and then sent it to Kevin Bradford of Allied's compliance department to put it through the "compliance process." Bradford returned an edited privacy notice to Arko three to four weeks later. Arko does not indicate what the compliance process is. Arko states that in his individual review he may have compared the letter to letters that had been used previously. Arko further states that he has looked at the GLBA, but does not recall the exact source he received this information from, and states that he attended one and probably more conferences specifically on the GLBA. Arko also never reviewed the letter and the notice together for authorization purposes, but stated that he assumed Allied "reviews everything."

Although the depositions of McNall and Arko indicate that Allied had some involvement in reviewing privacy notices, specifically the one at issue in this case, when looking at the evidence in the light most favorable to plaintiffs, as this court must, it is not possible to conclude defendants are entitled to summary judgment. There is little clear evidence of a procedure by either defendant to review privacy notices, much less review the notices in conjunction with the letters for compliance. McNall's deposition alone suggests the privacy notice was not reviewed by the same procedures used to review collection letters. Moreover, although Arko made a review of the notice, his deposition statements could also lead one to reasonably infer that he relied on the procedures in place at Allied to throughly review the notice. Without clear evidence as to what those procedures were, this court cannot conclude they were reasonably adapted to avoid the error that occurred here. As a result, defendants' motion for summary judgment is denied.

1. Although the parties agree that these documents were sent by Allied, they disagree as to whether both documents were sent on behalf of TPLLC. TPLLC required Allied to send the notice with Allied's first notification letter, as TPLLC believed it was required to send the notice to debtors pursuant to the Gramm-Leach-Briley Act (GLBA), 15 U.S.C. § 6803.

2. Allied asserts that, although Judge Pallmeyer's decision in Hernandez is seemingly on point, this court should not follow it because it is factually distinguishable from the case bar. Specifically, Allied points out that in that case the notice itself stated that the defendants collected nonpublic personal information "[in] connection with collection on . . . your account." See Hernandez, No. 04 C 7844, 2007 WL 2874059, at *5. However, although Allied is correct that the notice at issue here does not refer to collection in any manner, in this case there are other factors such as the language of the letter and the symbol on both the letter and the notice that connect the notice to the

collection of the debt. In addition, this case is similar to <u>Hernandez</u> in one of its most important aspects: both cases involve a collection letter and a notice that were sent in the same envelope. <u>See id.</u> at *10.

Moreover, the cases cited by defendants in support of its argument are readily distinguishable. In <u>Buckley</u>, 249 F.3d 678, <u>Bailey v. Sec. Nat'l Servicing Corp.</u>, 154 F.3d 384 (7th Cir. 1998), <u>McCready v. Jacobsen</u>, No. 04 C 1782, 2005 WL 2335489 (N.D. Ill. September 22, 2005), <u>Salsbury v. Trac a Chec, Inc.</u>, 365 F. Supp. 2d 939 (C.D. Ill. 2005), and <u>Wexler v. Banc of Am. Auto Fin. Corp.</u>, No. 00 C 865, 2000 WL 1230497 (N.D. Ill. August 25, 2000), no outside factors showed that the communication to the debtor involved the collection of the debt, but rather the communications individually appraised the debtor of information or expressly espoused a different goal. Although more analogous to the facts of this case, <u>Porter v. Fairbanks Capital Corp.</u>, No. 01 C 9106, 2003 WL 21210115 (N.D. Ill. May 21, 2003) is also distinguishable. In that case, the district court rejected the notion the debt collector's "course of collection conduct" subjected each individual communication to § 1692e. <u>Id.</u> at *3. Rather the court found that each occasion of communication had to be evaluated separately. <u>Id.</u> However, unlike <u>Porter</u>, the communication at issue in this case was not sent subsequent to and separate from the collection materials, and thus the combination of the two communications together can be considered in assessing their individual meaning. <u>See Hernandez</u>, No. 04 C 7844, 2007 WL 2874059, at *10.

3. Because plaintiffs' § 1692e claim succeeds on grounds that the notice falsely claims defendants' right to make disclosures that would be prohibited by § 1692c, the court need not decide whether the notice also threatens to violate § 1692d.

4. Although the reasoning in <u>Hernandez</u> applies to this case insomuch as it demonstrates summary judgment for defendants is not merited, the court agrees with defendants that the language on the face of the notice in that case was significantly different from this case as to merit the denial of plaintiffs' motion for summary judgment.

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MELVIN T. STEWART, individually        )
and as next friend of THELMA R. STEWART,     )
            Plaintiff,        )
                     )
        v.        )        1:04-cv-1213-LJM-VSS
                     )
ASSET ACCEPTANCE LLC,        )
          Defendant.        )

### ORDER ON DEFENDANT'S MOTION TO DISMISS

      This cause is now before the Court on the Defendant's Motion to Dismiss.  Defendant, Asset

Acceptance LLC ("Asset"), contends that plaintiff, Melvin T. Stewart, individually and as next friend

of Thelma R. Stewart ("Stewart"), failed to state a claim upon which relief can be granted in his

complaint.  Stewart asserts that Asset violated the Fair Debt Collection Practices Act ("FDCPA")

in the privacy notice attached to a collection letter he received.  Asset states that the privacy notice

is in compliance with the Gramm-Leach-Bliley Act, and that there has been no actual violation of

the FDCPA.

      For the reasons discussed herein, the Court finds that Plaintiff's complaint is sufficient to

state a claim under one section of the FDCPA, 15 U.S.C. § 1692e; therefore, Asset's Motion to

Dismiss is **DENIED** with respect to this claim. However, Asset's Motion to Dismiss is **GRANTED**

with respect to claims under § 1692c or § 1692d.

### I.  FACTS ALLEGED IN COMPLAINT

      Stewart alleges that Asset is a debt collector under the FDCPA.  (Compl. at ¶ 7).  Asset is

in the business of buying bad debts allegedly owed by consumers, including credit card debts, for

a fraction of face value and then enforcing the debts against the consumers. (Compl. at ¶ 6).

On or about December 8, 2003, Asset sent Thelma Stewart a letter that sought to collect an alleged debt incurred for personal, family, or household use. (Compl. at ¶¶ 13, 15). Melvin Stewart, Ms. Stewart's son, received the letter because he handles his mother's affairs under a power of attorney. (Compl. at ¶¶ 4, 14). The letter contained a collection demand with a notice of the privacy and information disclosure practices of Asset on the back. (Compl. at ¶ 17).

The privacy notice states "We collect nonpublic personal information about you" from "applications or other forms," "your transactions with us, prior owners of your account, our affiliates, or others," and "a consumer reporting agency." (Compl. at ¶ 18, Ex. A). The plaintiff alleges that this information is integrally related to debt collection. (Compl. at ¶19). The privacy notice then states that the information may be disclosed to third parties including "financial service providers such as credit grantors, collection agencies and debt buyers" and that Asset "may disclose nonpublic personal information about you to affiliated debt purchasers and non-affiliated third parties as permitted by law." (Compl. at ¶ 20, Ex A).

Stewart alleges that many of these disclosures would be prohibited by the FDCPA because they are with persons other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." (Compl. at ¶ 21). Stewart contends that several of the listed uses of the nonpublic personal information would amount to publication of lists of persons who have allegedly refused to pay debts, and either still have not paid or were ultimately induced to pay. (Compl. at ¶ 22). Stewart argues that both activities would be a violation of the FDCPA if they were actually to occur, and Stewart alleges that Asset violates 15 U.S.C. §1692e merely in stating that it would engage in these

2

activities or has the right to do so.  (Compl. at ¶ 21, 22).  Stewart claims that inclusion of such statements in a debt collection letter amounts to an implicit threat that the debtor's privacy will be invaded if the debt is not paid.  (Compl. at ¶ 25).

The privacy notice contains an invitation to "opt-out" of disclosures of personal information and directs Stewart to call or mail a form to Asset "if [the consumer] prefer that we not disclose nonpublic personal information . . . to nonaffiliated third parties . . . ."  (Compl. at ¶ 24, Ex. A). Plaintiff concludes that this procedure is a misstatement of consumer's rights and, therefore, a violation of 15 U.S.C. 1692e.  The misstatement occurs because under 15 U.S.C. 1692c, the consumer must grant express permission directly to the debt collector before the debt may be disclosed to anyone other than "the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." *Id.*

Stewart brings this suit as a class action on behalf of a class of people with addresses in Indiana, Illinois, or Wisconsin who received the same privacy notice.  (Compl. at ¶¶ 26-27).


## II. <u>RULE 12(B)(6) STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a claim is subject to dismissal for "failure to state a claim upon which relief may be granted." *United States v. Clark County, Indiana*, 113 F. Supp. 2d 1286, 1290 (S.D. Ind. 2000).  When considering a motion under this rule, the Court must examine the sufficiency of plaintiff's complaint, not the merits of the lawsuit.  *Id.*  The Court shall accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff.  *Id.*  Dismissal under Rule 12(b)(6) is proper only if the plaintiff could prove no set of facts in support of his claims that would entitle him to relief.  *Chavez v. Ill. State Police*, 251 F.3d 612,

3

648 (7th Cir. 2001) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Veazey v. Communications & Cable of Chi., Inc.*, 194 F.3d 850, 854 (7th Cir. 1999)). "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Id.* (quoting *Veazey*, 194 F.3d at 854).

Stewart attached six exhibits to his Response to Defendant's Motion to Dismiss that were not attached to the complaint. (Pl.'s Resp., Ex. A, B, C, D, E, F). Where the parties submit material outside of the pleadings, the Court is obligated to either not consider the extraneous submissions in ruling on the motion or to convert the motion to one for summary judgment and provide the parties with an opportunity to submit supplementary materials. *See Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000).

The Court declines to convert the Motion to Dismiss into a Motion for Summary Judgment, and accordingly, the exhibits attached to Plaintiff's Response and references to the exhibits in the Response are excluded from the Court's consideration.


## III. DISCUSSION

Stewart's complaint is sufficient to invoke the FDCPA, which requires that the challenged action be taken by a "debt collector" in connection with the collection of a "debt." 15 U.S.C. § 1692a. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[1] 15 U.S.C. § 1692a(6). Stewart states that Asset is a "debt

---

[1]The statutory definition of debt collector does enumerate six exceptions to the definition, however Stewart's complaint does not allege that Asset falls within any of these exceptions.

collector" as defined above, and that it is engaged in the business of buying bad debts allegedly owed by consumers and enforcing the debts. (Compl. at ¶ 6-7).

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Stewart states that the alleged debt was incurred by an individual for personal, family or household use. (Compl. at ¶ 15).

Finally, Stewart states that the letter which contained the privacy notice sought to collect a debt. (Compl. ¶ 15). The letter, attached to the complaint, and therefore part of the pleadings, states in bold print before the signature, "This is an attempt to collect a debt and any information obtained will be used for that purpose." (Compl., Ex. A). Stewart's complaint is sufficient to allege that the challenged action was performed in connection with the collection of a debt; the next question is whether the complaint is sufficient to state a violation of the FDCPA upon which relief could be granted.

Stewart does not allege any actual violation of 15 U.S.C. §1692c or §1692d. Asset's privacy notice states that it collects and may disclose certain nonpublic personal information to third parties including "[f]inancial service providers such as credit grantors, collection agencies and debt buyers" as well as "affiliated debt purchasers and non-affiliated third parties as permitted by law." (Compl., Ex. A.). Stewart alleges that some of these disclosures would amount to publication of a list of debtors, which is defined as "harassment" and a violation of 15 U.S.C. § 1692d. (Compl. at ¶¶ 10, 20, 22). Similarly, Stewart alleges that disclosure of personal information to some of the third parties listed in Asset's privacy notice would be a violation of 1692c, which prohibits

communication "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." (Compl. at ¶¶ 9, 20-21).    Although Stewart alleges that "actual publication of such lists would violate 15 U.S.C. §1692d . . . " and "[a]ctual disclosures of this nature would violate 15.U.S.C. §1692c . . . ," Stewart claims no actual disclosures in violation of the FDCPA.    To the extent that Stewart's complaint attempted to claim relief under 15 U.S.C. § 1692c or § 1692d, those claims are dismissed.[2]

However, Stewart says that Asset's mere assertion that it has the right to make such disclosures or publish such lists violates 15 U.S.C. §1692e.

> A debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt.    Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ***
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> ***
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.    Stewart highlights two of the specifically enumerated violations of this section, subsections (5) and (10).    Stewart alleges two potential violations of the section: the privacy notice's assertion of the right to make third party disclosures of the consumer's nonpublic personal

---

[2] This includes Stewart's assertions in the complaint that Asset engages in the practice of selling lists of consumers who have not paid their debts to subprime credit card companies who then offer to issue a card to the consumer if they will put some or all of the unpaid debt on the card. While this may constitute a violation of §1692d, Stewart does not allege that his or his mother's names have been sold on any such list, and therefore does not state any violation of the act. Any additional claim regarding violation of §1692d is dismissed.

6

information and the privacy notice's opt-out procedure.

As mentioned above, Stewart alleges that by saying that it collects and may disclose information to certain affiliated and nonaffiliated third parties, Asset is implicitly threatening to take such action, or publish lists of consumers with debts if the consumer does not pay. Because these actions "would be" violations of the FDCPA, Stewart states that these are threats to take an action that cannot legally be taken under § 1692e(5).

Stewart also points to the "opt-out" procedure described in Asset's privacy notice as a false representation. Asset's notice states that in order to decline information sharing with nonaffiliated third parties, the debtor must call a toll free number or fill out a form at the bottom of the letter and mail it to Asset. The form has a box to check that says "I wish to exercise my rights to opt out of certain third-party information sharing, as described in this privacy notice." The form then asks for the debtor's name, phone number, and address "to change our records to accurately reflect your desire to opt out."

Stewart contends that this procedure is a misrepresentation because it is an inaccurate statement of a consumer's rights under 15 U.S.C. § 1692c:

> (b) Communication with third parties. Except as provided by § 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.[3]

Asset's notice asks a consumer to opt-out of disclosure, rather than give prior consent directly

---

[3] The exception in § 1692b refers to communication with a person other than the consumer for the purpose of acquiring information to locate the consumer, and limits the scope of such communications.

to the debt collector before any such disclosure could occur. In light of the clear statement on the front of the letter that it "is an attempt to collect a debt and any information obtained will be used for that purpose," and the fact that the opt-out provision asks for information from the consumer under an alleged misstatement of the consumer's rights, Stewart's complaint is sufficient to state a claim upon which relief could be granted under § 1692e(10), prohibiting the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Asset's contention that the privacy notice comports with the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 ("GLB"), is irrelevant to its Motion to Dismiss. Stewart's complaint does not allege a violation of 15 U.S.C. § 6801, but alleges that Asset violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. Asset's assertions about the GLB are in the nature of an affirmative defense to Stewart's claim. "Only when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Britsol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). When a valid, unmistakable defense is obvious from the face of the complaint so as to render the suit frivolous, the suit can be dismissed before defendant raises the defense in its answer. *See Walker v. Thompson*, 288 F.3d 1005, 1009-1010 (7th Cir. 2002). The FDCPA provides for an affirmative defense. A debt collector is not liable if it shows "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Stewart's complaint does not admit the elements of this defense for Asset. Moreover, it is not "unmistakable" that alleged compliance with the GLB would establish that any FDCPA violation was unintentional error

8

or that Asset had any procedures in place to avoid such error.

Without getting into the merits of the case, the Court finds that the pleadings are sufficient to state a claim upon which relief could be granted under the FDCPA.

## IV.  CONCLUSION

For the reasons discussed herein, the Court finds that plaintiff's, Melvin T. Stewart, individually and as next friend of Thelma R. Stewart, complaint is sufficient to state a claim under one section of the FDCPA, 15 U.S.C. § 1692e; therefore, Asset's Motion to Dismiss is **DENIED** with respect to this claim.  However, Asset's Motion to Dismiss is **GRANTED** with respect to claims under § 1692c or §1692d.

IT IS SO ORDERED this 19th day of November, 2004.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Cathleen Maria Combs
EDELMAN, COMBS, LATTURNER LLC
ccombs@edcombs.com

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER LLC
courtecl@aol.com

Renee J. Mortimer
HINSHAW & CULBERTSON
rmortimer@hinshawlaw.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MELVIN T. STEWART, individually and   )
as next friend of THELMA R. STEWART,   )
     Plaintiff,        )
              )
    vs.          )    1:04-cv-1213-LJM-VSS
              )
ASSET ACCEPTANCE, LLC,     )
     Defendant.      )

## ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

  This matter is before the Court on a Motion for Class Certification brought by Plaintiff, Mr. Melvin T. Stewart ("Melvin"), individually and as next friend of his now-deceased mother, Ms. Thelma R. Stewart ("Thelma") (collectively, "Plaintiff"), against Defendant, Asset Acceptance, LLC ("Asset"). Plaintiff has moved for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. The issues have been fully briefed by the parties. For the reasons discussed herein, the Court **GRANTS** Plaintiff's motion.

## I. **FACTUAL BACKGROUND**

  Although generally a court will determine the suitability of class certification on the facts alleged in the complaint and avoid an inquiry into the merits, the Seventh Circuit has stated: "[A] judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). With that principle in mind, this Court

1

will draw upon the facts alleged in Plaintiff's complaint, the parties' briefs in this matter, and the submitted exhibits.

Plaintiff has brought this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff's claims are based on a dunning letter that is alleged to be in violation of the FDCPA, specifically § 1692e. *See* November 19, 2004, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss. This standard dunning letter was sent by Asset to 58,845 residents in the state of Indiana, including Plaintiff. Def. Br. at 12. Asset sent Thelma her dunning letter on December 8, 2003. *See* Compl. Ex. A. Melvin, who at the time was acting as Thelma's power of attorney, received the letter, opened it, and promptly forwarded it to Thelma's (and now his) attorney. Pl. Reply at 4-5.

The dunning letter contains an allegedly illegal "privacy policy" that states: "We collect nonpublic personal information about you from the following sources: Information we receive about you from you on applications or other forms; Information about your transactions with us, prior owners of your account, our affiliates, or others; and Information we receive from a consumer reporting agency." Compl. Ex. A. The dunning letter also states:

> We may disclose [certain but specified kinds of] nonpublic personal information about you to the following types of third parties[:] Financial service providers such as credit grantors, collection agencies and debt buyers. We may also disclose nonpublic personal information about you to affiliated debt purchasers and nonaffiliated third parties as permitted by law. . . . If you prefer that we not disclose nonpublic personal information about you to nonaffiliated third parties, you may opt out of those disclosures [by calling or writing].

*Id.* Plaintiff asserts that many of these uses of information, if actually done, would violate the FDCPA. Pl. Br. at 6-7. In an earlier order, this Court found that Plaintiff's only permissible claim against Asset is the claim that Asset may have violated § 1692e (prohibiting false or misleading

representations) by stating that it would make these disclosures or that it had the right to make these disclosures. *See* November 19, 2004, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss.

## II. <u>STANDARDS</u>

Class certification is governed by Rule 23. The burden of demonstrating that class certification is proper lies on the party moving for class certification. *See Ret. Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). To show that class certification is justified in this case, Plaintiffs first must satisfy the four requirements of Rule 23(a). *See Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000); *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 475 (7th Cir. 1997). The prerequisites of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Once the Court determines that Plaintiff has satisfied these prerequisites, the Court must determine whether one or more of the requirements of Rule 23(b) is met. *See Williams*, 204 F.3d at 760.

Rule 23(b)(1) authorizes a class when individual actions would create a risk of inconsistent adjudications that would create incompatible standards of conduct for the party opposing the class, or adjudications with respect to individual plaintiffs would "substantially impair or impede" the ability of other class member to protect their interests. FED. R. CIV. P. 23(b)(1). Rule 23(b)(2) authorizes a class when "the party opposing the class has acted or refused to act on grounds generally

applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). *See also Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999). Classes certified pursuant to Rules 23(b)(1) or 23(b)(2) are not opt-out classes and notification to class members is not required. FED. R. CIV. P. 23(c)(2)(A). In contrast, Rule 23(b)(3) authorizes a class when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). A class authorized under Rule 23(b)(3) requires personal notification to its potential members, who then have the opportunity to opt out of the class litigation. FED. R. CIV. P. 23(c)(2)(B).

## III. <u>DISCUSSION</u>

### A. **RULE 23(a)**

Taking each element in turn, the Court finds that Plaintiff meets all four requirements of Rule 23(a) for class certification.

### 1. <u>Numerosity</u>

Asset does not dispute that Plaintiff's proposed class meets the numerosity requirement of Rule 23(a)(1); that is, "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The parties estimate the class at 58,845 persons. The numerosity requirement clearly is met.

## 2. <u>Commonality and Typicality</u>

Asset does not concede that the Plaintiff and the putative class members share common questions of law or fact, as required by Rule 23(a)(2). A "common nucleus of operative fact" generally will satisfy the commonality requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Plaintiff challenges Asset's use of standardized language in letters sent by Asset to the entire putative class. Plaintiff alleges that this standardized language violates § 1692e of the FDCPA. These allegations of standardized conduct show that the putative class members' claims present common issues of law and fact, satisfying the commonality requirement.

The typicality requirement of Rule 23(a)(3) is closely related to the issue of commonality. *Rosario*, 963 F.2d at 1018. The Plaintiff brings its claims pursuant to § 1692e of the FDCPA. Plaintiff's claims arise from an allegedly illegal course of conduct Asset took towards the entire putative class, and Plaintiff's claims are based upon the same legal theory as those of the putative class members. Hence, Plaintiff's claims are typical of the putative class, and the typicality requirement of Rule 23(a) is satisfied. *See id*; *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Asset disputes that Plaintiff has met the commonality and typicality requirements. Asset argues that Melvin has no right to sue because the dunning letter was addressed to Thelma and not him. While the Seventh Circuit has not explicitly ruled on this issue, the vast weight of authority is against Asset. *See Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649-50 (6th Cir. 1994) (en banc); *Flowers v. Accelerated Bureau of Collections*, No. 96 C 4003, 1997 U.S. Dist. LEXIS 3354, at *20-23 (N.D. Ill. Mar. 19, 1997); *Mantell v. Feingold & Levy*, No. 96 C 1869, 1997 U.S. Dist. LEXIS 1013, at *7 (N.D. Ill. Jan. 30, 1997); *Dolan v. Schreiber & Assoc., P.C.*, No. 01-10177, 2002

5

U.S. Dist. LEXIS 6005, at *6-8 (D. Mass. Mar. 19, 2002); *Sibersky v. Borah Goldstein, Altschuler & Schwartz, P.C.*, No. 99 cv 3227, 2000 U.S. Dist. LEXIS 14043, at *14-16 (S.D.N.Y. Sept. 28, 2000); *Riviera v. MAB Collections, Inc.*, 682 F. Supp. 174, 175 (W.D.N.Y. 1988); *West v. Cohen*, 558 F. Supp. 564, 577 (W.D. Va. 1983). In the principal case, *Wright v. Finance Service of Norwalk, Inc.*, the Sixth Circuit interpreted 15 U.S.C. § 1692k in light of an alleged § 1692e violation. *Wright*, 22 F.3d at 649-50. The Sixth Circuit stated that § 1692k grants standing under the FDCPA to any "person" affected by the allegedly illegal practice; this language includes any person who receives and opens an illegal collection letter although he or she is not the addressed debtor. *See id.* This Court is persuaded by the reasoning of this authority, and finds that Melvin, who received Thelma's allegedly illegal dunning letter while acting as her power of attorney, has standing to sue for violations of § 1692e of the FDCPA. Hence, the operative facts on which Plaintiff's claims are based are common to the putative class, and Plaintiff's legal theory is typical of the putative class's.

Asset also argues that Plaintiff has failed to demonstrate the substantive requirements of the FDCPA. Def. Br. at 6-7. However, nothing about such attack on Plaintiff's facts and theories leads this Court to believe they are atypical defenses. *Cf. J.H. Cohen & Co. v. Am. Appraisal Assoc. Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("an arguable defense *peculiar* to the named plaintiff . . . may destroy the required typicality.") (emphasis added). Plaintiff and the putative class members present common issues of law and fact and typical claims and theories.

### 3. <u>Adequacy of Representation</u>

Critical to the requirement of adequacy of representation is the ability of the named plaintiff's counsel to adequately represent the class. *See Sec. of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th

Cir. 1986); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Plaintiff's counsel's credentials include having argued some of the leading cases in FDCPA law and class action procedure. *See* Pl. Ex. E. at 6.

Asset attacks this element of Rule 23(a) on the same grounds that Asset attacked Plaintiff's commonality and typicality requirements, to wit, that Melvin is not a member of the defined class and therefore Melvin cannot adequately represent the class. As noted above, however, Asset's arguments are unsuccessful. As for Melvin, he has displayed adequate competence in his knowledge of this matter and in his relationship with counsel. *See* Pl. Ex. B at 70, 77-79; *Sebo v. Reubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999).

Based on Plaintiff's evidence, this Court is confident Plaintiff's counsel will adequately and fairly represent Plaintiff and the putative class. Because Plaintiff satisfies each requirement of Rule 23(a), the Court will examine whether class certification is proper under Rule 23(b).

## B. RULE 23(b)

A district court has three options to consider for certifying a class under Rule 23(b). *See Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581-82 (7th Cir. 2000) (citing *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898-99 (7th Cir. 1999)). However, the Plaintiff seeks certification of their claims pursuant only to Rule 23(b)(3). A class should be certified under Rule 23(b)(3) if common questions of law or fact predominate over individual questions and class treatment is a superior method for adjudicating the controversy. FED. R. CIV. P. 23(b)(3). As discussed, the putative plaintiffs present common questions of law and fact; these common questions dominate over any individual questions. The putative plaintiffs' legal theories rest upon one federal

law—15 U.S.C. § 1692e—and it is difficult to imagine a more appropriate way to litigate 58,845 identical claims. The only question for certification is one of distribution of damages.

Asset argues that, because the FDCPA limits recovery in class actions to a total of $500,000, the individual recovery amount—assuming a maximum class and maximum damages—will be limited to between $8.50 and $35.00, which Asset argues as *de minimus* in light of the $1,000 individual return each putative class member could get if each brought suit individually. This Court disagrees. Under Rule 23(b)(3), each individual class member can opt out of the class without destroying the class and preserve his or her individual claims. Hence, any concerns that individuals could not recover their individual maximum amount are put to rest by the plain language of the Rule. FED. R. CIV. P. 23(c)(2)(B). Plaintiff's motion satisfies Rule 23(b)(3).

## IV. **CONCLUSION**

For all the foregoing reasons, Plaintiff's motion is **GRANTED**. The Court has found that the named plaintiffs satisfy the criteria of Federal Rules of Civil Procedure 23(a) and 23(b)(3) to proceed with a class action against Defendants on behalf of the following class:

    (a)     all natural persons with Indiana addresses,

    (b)     to whom Asset sent a notice in the form represented by Plaintiff's Complaint Exhibit A,

    (c)     on or after July 21, 2003 (one year prior to the filing of this action), and

    (d)     on or before August 9, 2004 (20 days after the filing of this action).

8

Plaintiff is hereby ordered to provide a plan and draft for notification of the class members, pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), on or before August 26, 2005.

IT IS SO ORDERED this 26th day of July, 2005.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

John D. Blythin
EDELMAN COMBS LATTURNER & GOODWIN LLC
jblythin@edcombs.com

Cathleen Maria Combs
EDELMAN COMBS LATTURNER & GOODWIN LLC
ccombs@edcombs.com

Daniel A. Edelman
EDELMAN COMBS LATTURNER & GOODWIN LLC
courtecl@aol.com

James O. Latturner
EDELMAN COMBS LATTURNER & GOODWIN LLC
jlatturner@edcombs.com

Derek Bryant Rieman
EDELMAN COMBS LATTURNER & GOODWIN LLC
drieman@edcombs.com

Renee J. Mortimer
HINSHAW & CULBERTSON
rmortimer@hinshawlaw.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com

Jennifer Wigington Weller
HINSHAW & CULBERTSON
jweller@hinshawlaw.com

9