**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARCIA K. MILLER, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No.  08 CV 780** |
| **v.** | ) | |
| | ) | **Judge Coar** |
| **MIDLAND CREDIT MANAGEMENT,** | ) | **Magistrate Judge Ashman** |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs Marcia K. Miller, William Miller, Charlane Yoways-Dawson, and William Anderson ("Plaintiffs"), on behalf a class[1] of Cook County residents who received a privacy notice in conjunction with a debt collection letter sent by Defendants Midland Credit Management, Inc. ("MCM"), Midland Funding LLC ("MFL"), and Encore Capital Group, Inc. ("Encore"), formerly MCM Capital Group, Inc. (collectively, "Defendants"), bring this cause of action against alleging a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  Both parties have moved for summary judgment.  For the reasons explained below, Plaintiffs' motion is granted in part and denied in part, and Defendants' motion is granted in part and denied in part.

I.    **FACTS**

The core of this dispute is simple: Plaintiffs received dunning letters from Defendants that included a "Privacy Notice" that allegedly violated the FDCPA.  MFL is a Delaware

---

[1] The plaintiff class is defined all natural persons with Cook County addresses to whom any of the defendants sent the MCM-109 "privacy notice," on or after February 2007 and on or before February 25, 2008.

corporation in the business of taking title to charged-off debts allegedly owed by consumers and originally owed to others.  Pls.' SOF[2] ¶ 3; Defs.' SOF ¶ 3.  MCM is a Kansas corporation that acts as a debt collector for the debts purchased by MFL.  Pls.' SOF ¶ 6; Defs.' SOF ¶ 1.  MCM is the parent corporation and holding corporation for MFL; Encore is the parent corporation and holding corporation for MCM.  Pls.' SOF ¶ 11.  Encore raises capital for MFL by securing funds from investors for the purpose of purchasing the debts to which MFL takes title.  *Id.* at ¶ 12.  In their filings, Defendants do not dispute that MFL and MCM are "debt collectors" within the meaning of the FDCPA, but do dispute that Encore is.  *See e.g.*, Ds.' Mem. in Opposition to Pls.' Mot. for Summ. J. 13.

In 2007, MCM, acting on behalf of MFL, sent Plaintiffs correspondences, each consisting of two pages, a debt collection letter and a document entitled "Privacy Notice" ("Form MCM-109" or the "privacy notice").  Pls.' SOF ¶ 23.  The letters sought to collect past-due receivables purchased by MFL.  *Id.* at ¶ 24.  There are five different debt collection letters, but they all contain similar language.  *Id.* at ¶ 35-36.  For all five, the front of the letter stated that "Midland Credit Management, Inc. ('MCM'), a debt collection company," is "the servicer of this obligation."  *Id.* at ¶ 26, 36; Pls.' SOF Appendix 1, Exs. A-D.  On the back of the letters sent to Plaintiffs, highlighted in a border and bold print, was printed:

> **Please understand that this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.**

*Id.* (emphasis in original).

---

[2] Plaintiffs' Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment on Liability will be referred to as "Pls.' SOF"; Defendants' Statement of Additional Material Facts will be cited as "Defs.' SOF".  The facts cited have been admitted by the opposing party unless otherwise noted.  This section summarizes the facts vis-à-vis the debt collection letters and privacy notices; facts relevant to the individual elements of the alleged FDCPA violations will be discussed in the Analysis section below.

The privacy notices were delivered as the second sheet of the two page correspondences and were enclosed in the same envelope as the debt collection letters.  Pls.' SOF ¶ 35.  At the top, the privacy notice stated, "[MCM] is delivering this Privacy Notice to you to generally describe the nonpublic personal and financial information we gather about you as the servicer of your account, and our privacy practices relating to such information and how those policies relate to the protection, use, and disclosure of your *non public personal information*.  Please carefully read this Privacy Notice and Opt Out Notice."  *Id.* (emphasis in original).  Under this statement, the privacy notice read:

**What Information Do We Collect?**

We collect nonpublic personal information about you from the following sources:
- Information we receive from you on applications or other forms.  This information may include:
  - Your name
  - Address
  - Social security number
  - Telephone number
  - Other relevant information that you provide
- Information we receive about your account transactions with us, our affiliates, or others including the original creditor. This information may include:
  - Account balance
  - Payment history
  - Account activity
  - Other customer information
- Information we receive from consumer reporting agencies (such as credit scores and history) and other information relating to your creditworthiness.

**To Whom Do We Disclose Information?**

We may disclose nonpublic personal information about our current and former customers to the following types of third parties:
- Non-financial companies, such as direct marketers or retailers of consumer products and services
- Financial service providers, such as companies engaged in banking, consumer finance, debt purchasing and credit card insurance
- Others, such as our affiliated debt purchases and our parent company
- The customer's spouse, if such disclosure is otherwise permitted by law

We may also disclose nonpublic personal information about our current and former customers to nonaffiliated third parties as required or permitted by law.

We may disclose all of the information that we collect about our current and former customers, as described to the left under "What Information Do We Collect?", to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

**What Information Do We Disclose?**

As permitted by law, we may disclose all information that we collect about you, as described above under "What Information Do We Collect?"

. . . .

*Id.* The privacy notice then states: "If you prefer that we *not* disclose nonpublic personal information about you to nonaffiliated third parties (other than disclosures permitted by law), please detach and complete the Opt Out Response Form below . . . ." *Id.* (emphasis in original).

Plaintiffs allege that the privacy notice violated 15 U.S.C. § 1692c because Defendants actually disclosed nonpublic financial information about debtors to credit card issuers, 15 U.S.C. § 1692e because it falsely stated that Defendants were entitled to make such disclosures, and 15 U.S.C. § 1692d because Defendants' alleged actual disclosure of Plaintiffs' nonpublic information amounted to a publication of a list of debtors to third parties in violation of 15 U.S.C. § 1692d(3). The parties have filed cross motions for summary judgment on liability.

**II.     STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the burden of establishing that

no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If

the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of

evidence" is insufficient) demonstrating that there is a genuine issue for trial.  Fed. R. Civ. P.

56(e); *Anderson*, 477 U.S. at 252; *see also Celotex*, 477 U.S. at 324.  When reviewing a motion

for summary judgment, the court must view the facts in the light most favorable to the

nonmoving party and draw all reasonable inferences in that party's favor.  *See Schuster v. Lucent

Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).  Where, as here, the parties have filed cross

motions for summary judgment, the court is obligated to consider the facts from a "Janus-like"

perspective, examining each party's motion in turn and viewing all evidence and drawing all

inferences in favor of the party opposing the motion.  *F.T.C. v. Cleverlink Trading Ltd.*, 519

F.Supp.2d 784, 792 (N.D. Ill. 2007).

### III.    ANALYSIS

#### A.  Actual Disclosure of Nonpublic Information Under 15 U.S.C. § 1692c

Section § 1692c of the FDCPA states:

> [W]ithout the prior consent of the consumer given directly to the debt collector, or the
> express permission of a court of competent jurisdiction, or as reasonably necessary to
> effectuate a postjudgment judicial remedy, a debt collector may not communicate, in
> connection with the collection of any debt, with any person other than the consumer, his
> attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the
> attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c.  Plaintiffs allege that the privacy notices violated 15 U.S.C. § 1692c because

Defendants actually disclosed nonpublic financial information about debtors to credit card

issuers.  Specifically, Plaintiffs allege that Defendants shared information about Plaintiffs in the

context of a "balance transfer" joint marketing program that MCM had with Jefferson Capital

Systems, LLC ("Jefferson Capital") from June 2005 to June 2008.  Under this program, certain

debtors were offered the opportunity to put all or part of their debt owed to Defendants onto a

new credit card to be issued by Jefferson Capital.  Pls.' SOF ¶ 60-61.  If the debtor elected to

transfer his balance to the new credit card, Jefferson Capital would pay Defendants a fee for the

referral of the new account.  *Id.* at 62.  Once the debt was transferred to the new credit card, the

old debt would be considered satisfied and a new debt would be created on the credit card.  *Id.* at

63.

Defendants do not deny that such an balance transfer program existed, nor argue that

Defendants' disclosure of information about Plaintiffs to Jefferson Capital under this program

would not constitute an actual disclosure within the meaning of § 1692c.  Instead, Defendants

argue that Illinois accounts were specifically excluded from the balance transfer program, and

that no MCM accounts bearing Illinois addresses were ever sent a balance transfer offer by

Jefferson Capital.  Defs.' Mem. in Opposition to Pls.' Mot. for Summ. J. 12.  Because Plaintiffs

and the plaintiff class are all Illinois residents, Defendants argue that Plaintiffs cannot prove that

Defendants actually disclosed any information pertaining to them.  This is a factual dispute that

requires closer examination of the evidence adduced thus far.

Plaintiffs' evidence of the actual disclosure is thin.  In fact, Plaintiffs appear to concede

that their evidence is insufficient to create a genuine issue of material fact as to whether any

nonpublic information was actually disclosed; they argue that whether any of the plaintiffs

received a balance transfer offer is ultimately irrelevant because Defendants' statements that they

may make such disclosures was a violation of 15 U.S.C. § 1692e(5). This argument punts the

issue.  For Plaintiffs' § 1692c cause of action to survive summary judgment, Plaintiffs must

show that there is a genuine issue of material fact as to whether Defendants actually disclosed any information about the named Plaintiffs and the plaintiff class.

During discovery, Defendants made two deponents available pursuant to Fed. R. Civ. P. 30(b)(6), which requires corporate parties to designate "one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."  Both witnesses, Defendants' in-house counsel Brian Frary and Defendants' marketing manager Catrina Stanley, testified that no MCM accounts bearing Illinois addresses were sent balance transfer offers by Jefferson Capital.  Frary stated that "[t]here has never been a balance transfer program within the last three years with regard to the state of Illinois."  Frary Dep.14:20-22 (Nov. 3, 2008).  Stanley testified that the balance transfer program with Jefferson Capital "had more state exclusions for the consumers that would receive a placement file [than another comparable program not at issue in this lawsuit] and some of those were Illinois, Indiana, Wisconsin."  Stanley Dep. 15:23-16:2 (Nov. 3, 2008).

Plaintiffs' only evidence that Defendants actually disclosed nonpublic information about them in the context of the balance transfer program is in the Amended and Restated Collection Agreement between Jefferson Capital and MCM (the "Agreement").  Exhibit A of a prior version of the Agreement had specifically excluded five states (MA, IL, IN, IA, and WI) from the balance transfer program.  Pls.' SOF ¶ 77.  The Agreement was modified by an Addendum on June 2, 2005.  *Id.*  at ¶ 78.  Among other things, the Addendum amended the Agreement by deleting Exhibit A and replacing it with Amended Exhibit A.  *Id.*  at ¶ 79. Amended Exhibit A lists four states for exclusion from the program (MA, NY, WV, and AR) but not Illinois.  Pls.' SOF Ex. 17 at MCM000427.  Plaintiffs reason from this omission that Defendants must have disclosed nonpublic information in violation of § 1692c.  However, this is a leap of logic; simply

because the Agreement no longer specifically excludes Illinois does not prove that Defendants *actually disclosed* information about Plaintiffs to Jefferson Capital.

To its Local Rule 56.1 Statement of Material Facts, Defendants appended an affidavit by Catrina Stanley. Stanley's affidavit states in essence that the omission of Illinois from Amended Exhibit A is scrivener's error, because the list of excluded states was intended to be cumulative, with New York, West Virginia, and Arkansas added to (rather than replacing) the list of states whose residents were ineligible for the balance transfer program. Defs.' SOF Ex. B, Decl. of Catrina Stanley ¶ 11-13 (Jan. 20, 2009). Stanley's affidavit then reiterates what she had already said in the deposition, that Illinois was not an eligible state. *Id.* at ¶ 13. Plaintiffs then moved to strike Stanley's affidavit for a variety of reasons, including its purported failure to comply with a protective order in this case and Local Rule 26.2(b), and moves for sanctions (presumably for the discovery grievances it documents at length in its motion to strike Stanley's affidavit, although the basis for sanctions is not explained in Plaintiffs' motion). Plaintiffs' motion to strike the affidavit and for sanctions is denied. Even without Stanley's affidavit, Plaintiffs have not demonstrated that there is any issue of material fact as to whether Defendants actually disclosed information about Illinois debtors to Jefferson Capital. At very best, the deletion of Illinois from Amended Exhibit A is circumstantial evidence of Defendants' actual disclosure of information, but such a deduction requires leaps of logic and factual speculation, and it is an example of the "mere scintilla" of evidence that is insufficient to meet a party's burden at summary judgment. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) ("The existence of a mere scintilla of evidence, however, is insufficient . . . The nonmoving party must show that there is evidence upon which a jury reasonably could find for the plaintiff.") (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52, 106 S.Ct. 2505).

Accordingly, Plaintiff's motion for summary judgment on its § 1692c claim is denied and Defendants' motion is granted.

**B.   Alleged Violation of 15 U.S.C. § 1692d(3)**

Plaintiffs also allege that the privacy notices violated 15 U.S.C. § 1692d(3), which prohibits "[t]he publication of a list of consumers who allegedly refuse to pay debts" except in certain circumstances not relevant to this case.   However, because Defendants did not actually disclose nonpublic information about Plaintiffs to third parties, Plaintiffs' motion for summary judgment on the 15 U.S.C. § 1692d(3) claim is denied.

**C.   False, Deceptive or Misleading Practices Under 15 U.S.C. § 1692e**

Plaintiffs allege also that the privacy notices violated 15 U.S.C. § 1692e because they falsely stated that Defendants were entitled to disclose nonpublic information about Plaintiffs when in fact they were not, and because the Opt Out provision is a false representation of Plaintiffs' rights under the FDPCA.  Section 1692e of the FDCPA states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

Prohibited representations include "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  Defendants offer two arguments for why the privacy notice did not violate this provision of the FDCPA: first, the privacy notice was not made "in connection with the collection of any debt," as required by 15 U.S.C. § 1692e; second, the privacy notice was not false, deceptive or misleading.

**1)   Connection with Debt Collection**

False, deceptive, or misleading representations are only prohibited by the FDCPA if they are made "in connection with the collection of a debt."  15 U.S.C. § 1692e.  Defendants contend

that the privacy notices were not sent in connection with the collection of a debt because,

standing alone, the documents

> do not request payment. They do not state a balance due and owing. They do not contain an account number, a reference to the original creditor, or any other details regarding the Plaintiffs' debts. Indeed, the notices do not even mention the *existence* of a debt.

Defs.' Mot. for Summ. J. 4.

In determining whether a debt collector's practices have violated the FDCPA, courts

apply the standard of the "unsophisticated debtor." *Pettit v. Retrieval Masters Creditor Bureau,*

*Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2002). The unsophisticated debtor "possesses rudimentary

knowledge about the financial world, is wise enough to read collection notices with added care,

possesses 'reasonable intelligence,' and is capable of making basic logical deductions and

inferences." *Id.* The unsophisticated debtor standard is an objective standard; thus "unrealistic,

peculiar, bizarre and idiosyncratic interpretations of collection letters" and the interpretation of

the "least sophisticated debtor" are to be rejected. *Id.* "The standpoint is not that of the *least*

intelligent consumer in this nation of 300 million people, but that of the average consumer in the

lowest quartile (or some other substantial bottom fraction) of consumer competence." *Evory v.*

*RJM Acquisitions Funding, L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007) (citations omitted).

Because it is designed to protect consumers, the FDCPA is, in general, liberally construed. *Ross*

*v. Commercial Fin. Services, Inc.*, 31 F.Supp.2d 1077, 1079 (N.D. Ill. 1999).

Under this standard, it is clear that the privacy notice was sent in connection with the

collection of a debt.  First, Defendants claim that the Privacy Notice was only sent pursuant to

Defendants' obligations under the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801 *et*

*seq.*, which requires financial institutions to disclose their privacy policies regarding customers'

nonpublic personal information.  Defendants' subjective intent is irrelevant: the unsophisticated

consumer would not see the second page after a debt collection letter as merely an attempt to comply with the GLBA unrelated to the debt discussed on the facing page.

Second, Defendants attempt to read the Privacy Notice as a singular document rather than as the second page of a two-page correspondence. Defendants cite to several cases for the proposition that communications that do not demand payment do not qualify as communications in connection with the collection of debt, yet none of the cases they cite to involve, as does the instant case, privacy notices sent as the second page of a two-page, single-envelope correspondence wherein the first page is a dunning letter.  *See, e.g.*, *Bailey v. Security National Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998) (letter warning that loan forbearance agreement would be null and void if payments continue to be late was not "in connection with the collection of a debt"); *Buckley v. Bass & Associates, P.C.*, No. 99 C 4044, 2000 WL 1006568 *2 (N.D. Ill. July 19, 2000) (letter that simply requests bankruptcy information is not a communication in connection with the collection of a debt under the ambit of the FDCPA); *Salsbury v. Trac A Chec, Inc.*, 365 F.Supp.2d 939 (C.D.Ill. 2005) (debt collector call to debtor to inform him that she had confirmed his representation by counsel and would no longer be contacting him is not "in connection with collection of debt").

Third, Defendants' citation to the recently enacted amendment to the FDPCA at 15 U.S.C. § 1692g(e) is similarly unavailing.  That section states:

> The sending or delivery of any form or notice *which does not relate to the collection of a debt* and is expressly required by the Internal Revenue Code of 1986, chapter 94 of this title [15 U.S.C.A. § 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an *initial* communication in connection with debt collection for purposes of this section.

15 U.S.C. § 1692g(e) (emphasis added).  Defendants reference to this section of the FDCPA

simply states a tautology: those communications which do not relate to the collection of a debt

do not relate to the connection of a debt.

This Court finds the court's reasoning in *Hernandez v. Midland Credit Management, Inc.*,

No. 04 C 7844, 2007 WL 2874059 (N.D. Ill. Sept. 25, 2007) convincing here.  In that case, the

court found a very similar privacy notice sent in very similar circumstances (and also involving

Defendants) to violate § 1692e(5).  In both cases, the privacy notices were sent in the same

envelope as the second page of a two-page correspondence, following a dunning letter whose

backside stated "Please understand that this is a communication from a debt collector. This is an

attempt to collect a debt. Any information obtained will be used for that purpose."  Pls.' SOF

Appendix 1, Exs. A-D; Appendix 12.  Defendants apparently made some slight adjustments to

the privacy notice after the *Hernandez* decision.  For example, whereas the *Hernandez* notice

stated that the information to be disclosed was collected "in connection with collecting on, or

servicing, your account" (thus clearly connecting it to the debt to be collected), the Privacy

Notice states only that "[Defendants] collect nonpublic personal information about you from the

following sources . . . ."  *Id.*  But there remains sufficient language in the Privacy Notice to

connect it with the dunning letter that immediately precedes it, e.g., "MCM is delivering this

Privacy Notice to you to generally describe the nonpublic personal and financial information we

gather about you *as the servicer of your account*" and "We collect nonpublic personal

information about you . . . [including] [i]nformation we receive about your account transactions

with us, our affiliates, or others including the *original creditor*."  *Id.*  The references to MCM as

"the servicer of your account" and to the "original creditor" on the Privacy Notice only make

sense vis-à-vis the debt collection letter that comes immediately before.

Let us not be coy. A Privacy Notice that references the debt and is folded into the same envelope as a debt collection letter is a communication made "in connection with the collection of a debt" for the purposes of 15 U.S.C. § 1692e.

### 2)   False, Deceptive, or Misleading Representations in the Privacy Notice

"Congress passed the [FDCPA] to curb abusive methods of debt collection.  Central to this objective is the Act's requirement that debt collectors state only truthful information." *Wahl v. Midland Credit Management, Inc.*, -- F.3d --, 2009 WL 426055 (7th Cir. Feb. 23, 2009).[3] When an FDCPA violation is clearly evident on the face of a collection letter, a court may award summary judgment to the FDCPA plaintiff.  *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 415 (7th Cir. 2005).

However, whether a representation is deceptive or misleading under the FDCPA cannot always be determined as a matter of law. Under the unsophisticated debtor standard, a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled.  *Pettit*, 211 F.3d at 1060. In such situations, factual evidence—including survey evidence that comports with the principles of professional survey research—could be used to determine whether a sufficiently large segment of the unsophisticated are likely to be deceived such that a factfinder could conclude that the statute has been violated.  *Evory*, 505 F.3d at 776. Finally, if a plaintiff offers no evidence except the text of the communication, and then if there was nothing deceptive-seeming about the communication, the court must dismiss the case as a

---

[3] On February 27, 2009, Defendants filed supplemental authority in support of their motion for summary judgment.  This motion was denied by this Court, which nonetheless looked at the case Defendants cited, *Wahl*, -- F.3d --, 2009 WL 426055.  The *Wahl* court held that debt collection letters which designated as the "principal balance" owed on a credit card account an amount which included interest and late fees did not violate the FDCPA prohibition against false or misleading information in collection notices.  *Wahl* is irrelevant here.  For the reasons discussed below, Defendants' Privacy Notice was false on its face.

matter of law.  *Evory*, 505 F.3d at 776-77 (quoting *Taylor v. Cavalry Investment, L.L.C.,* 365

F.3d 572, 574-75 (7th Cir. 2004) ("[I]f it is apparent from a reading of the letter that not even 'a

significant fraction of the population' would be misled by it . . . , the court should reject it

without requiring evidence beyond the letter itself."); *McMillan v. Collection Professionals, Inc.,*

455 F.3d 754, 760 (7th Cir. 2006) ("[U]ndoubtedly, there will be occasions when a district court

will be required to hold that no reasonable person, however unsophisticated, could construe the

wording of the communication in a manner that will violate the statutory provision.")).

Defendants argue that the privacy notice falls into this last category because there is

nothing false on the face of the letter and because Plaintiffs have not offered extrinisic evidence

of the type permitted by the Seventh Circuit to prove that unsophisticated consumers are likely to

be deceived.  Defendants cite to *Ruth v. Triumph Partnerships, LLC*, No. 06 C 50042, Slip Op.

(N.D. Ill. Sept. 23, 2008) (Kapala, J.), in which the court granted summary judgment in favor of

the debt collectors because the privacy notice at issue was not facially false and the plaintiffs had

failed to present extrinsic evidence that it was misleading or deceptive.

However, this Court finds that the Privacy Notice is facially false and that therefore the

Plaintiffs need not use extrinsic evidence to prove the § 1692e violation.  The language in the

Privacy Notice is more like the language that the court found to violate § 1692e in *Hernandez*

than that of the notice in *Ruth*.  The *Hernandez* notice stated:

> What Information Do We Disclose?
>
> We reserve the right to disclose all of the nonpublic personal information that we collect, as described above, as it pertains to our customers or former customers.

Pls.' SOF Appendix 12.  The *Ruth* notice, in contrast, states:

> What Information Do we collect and share?

To the extent permitted by law, we may collect and/or share all the information we obtain in servicing your account.

*Ruth*, No. 06 C 50042 (Dkt. 55-2 at 4).  The language in the Privacy Notice here reads:

What Information Do We Disclose?

As permitted by law, we may disclose all information that we collect about you . . . .

Pls.' SOF Appendix 1, Ex. A.  The words "as and "may" are the cruces of the issue.  Defendants urge the Court to read the sentence to mean "We might disclose all information we collect about you to the extent that we are permitted to under the law."  "As" is used as an adverb to mean "to the same extent," and "may" is used to suggest that disclosure is a possibility rather than a legal entitlement.  Under such an interpretation, the statement would not be patently false, since it merely states that Defendants' might claim an entitlement to disclose information coterminous with what the law permits.

The problem is that "may" has several meanings.  *See, e.g., Merriam-Webster Online Dictionary* ("May . . .  (a) *archaic*: to have the ability to; (b) to have permission to : to be free to; (c) – used to indicate possibility or probability . . . .") (retrieved March 5, 2009, from http://www.merriam-webster.com/dictionary/may).  Generations of grammar student have been forced to know the difference between "Can I go to the bathroom?" and "May I go to the bathroom?"  In the first formation, the subject wonders whether he is physically capable of getting to the bathroom, while in the latter, the subject inquires whether the teacher will give him permission to leave. This Court believes the use of "may" to indicate permission is a more natural reading of the privacy statement in context, especially because the introductory word "as" is used as a coordinating conjunction meaning "because."  Thus the sentence actually reads as a declaration of a right along the lines of "We are allowed to disclose all information that we collect about you because we are permitted to by the law."  The statement has substantively the

same meaning that the sentence that the court declared to be false in *Hernandez* ("We reserve the right to disclose all of the nonpublic personal information that we collect"), and likewise violates the FDCPA.

Ultimately, these arguments about the meaning of the "as permitted by law" statement are unnecessary. Even if the Court were to read the statement in the way that Defendants urge, there is another facially false representation in the Privacy Notice: the Opt Out provision. Somewhat surprisingly, Defendants make no argument anywhere in their summary judgment briefs regarding the Opt Out provision as a false representation in violation of § 1692e. The FDCPA prohibits communications in connection with debt collection between a debt collector and third parties (other than certain exceptions, none of which are applicable to this case) "without the *prior consent* of the consumer given directly to the debt collector." 15 U.S.C. § 1692c(b) (emphasis added). As numerous courts have held, debt collectors cannot require a debtor to take affirmative steps (like opting out) in order to prevent the disclosure of information about the debtor in connection with debt collection. *See, e.g.*, *Hernandez*, 2007 WL 2874059 at *12; *Chapman v. Worldwide Asset Management*, No. 04 C 7625, 2005 WL 818880 at *4 (N.D. Ill. April 6, 2005) ("[I]nconsistent with the FDCPA provisions which require that the debt collector obtain actual permission from the customer before disseminating certain information, the privacy policy provides that the customer must affirmatively act to prevent dissemination."); *Blair v. Sherman Acquisition*, No. 04 C 4718, 2004 WL 2870080 at *7 (N.D. Ill. Dec. 13, 2004) ("Requiring the consumer to affirmatively state that they do not want their information shared is not [an] accurate [statement of the consumer's rights], if the communication were in connection with the collection of a debt letter.").

As the court in *Hernandez* correctly decided, a privacy notice's "reservation of Defendants' right to disclose a debtor's information unless the debtor opts out thus constitutes a false representation of a debtor's rights, in violation of § 1692e(10); and the [privacy notice's] stated intent to make such disclosures constitutes a threat to take an action that Defendants cannot legally take, in violation of § 1692e(5)." 2007 WL 2874059 at *12.  The differences in language between the *Hernandez* notice and the privacy notice here do not convince this Court to reach a different conclusion; the Opt Out provisions are substantively the same.

Defendants' privacy notices have been the subject of ongoing litigation in this district. Following the decision against Defendants in *Hernandez*, Defendants made minor modifications to the privacy notice and sent these modified notices out to debtors.  This Court now finds that the modified notices still violate the FDCPA. Of course, Defendants could have avoided this result by scrapping the concept of the opt out provision altogether—for example, by sending solicitations, separate from the debt collection notices, asking debtors to opt *in* to the balance transfer program—but it instead elected to test the outer boundary of the law to preserve its balance transfer program as it was, and then wait for a court to police the borders. This Hegelian dialectic is becoming tiresome.  The Opt Out provision violates the FDCPA when sent in connection with a debt collection letter, and it should not be sent out again. Summary judgment on whether the privacy notice violates § 1692e(5) is granted in favor of Plaintiffs.

**D.  Whether Encore is a "Debt Collector" Within the Meaning of the FDCPA**

The FDCPA applies only to "debt collectors" whose conduct involves the collection of a debt. *Neff v. Capital Acquisitions & Mgmt. Co.,* 352 F.3d 1118, 1121 (7th Cir.2003) (citing *Pettit,* 211 F.3d at 1059).  A "debt collector" is defined in 15 U.S.C. § 1692a(6) to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the

principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." To be a "debt collector" under the FDCPA entails engaging in some affirmative conduct with regard to collecting a debt, as evidenced by the statute's use of active verbs. *McCready v. eBay, Inc.*, 453 F.3d 882, 888-89 (7th Cir. 2006); *Hernandez*, 2007 WL 2874059 at *15 (citing *McCready*). Defendants contend that Plaintiffs have not met their burden of showing that Encore is not a debt collector within the meaning of the FDCPA.[4]

   As in *Hernandez*, Defendants now argue that Encore is merely a holding company with no employees that does not purchase debt portfolios, send collection letters, or own any past-due receivables. The *Hernandez* court found Encore to be a debt collector on the basis of three reasons: (1) the *Hernandez* privacy notice stated that it was from Encore (using a name that under which Encore formerly operated); (2) Encore's current President and CEO (and former COO from 2000 to May 2005) Brandon Black developed the collection strategies and analytical procedures that distinguished Encore's approach to its business; (3) the FDCPA recognizes that one who acquires debt merely for the purpose of collection purposes acts more like a debt collector than a creditor, and Encore's SEC filings described itself as the manager of "charged-off consumer receivable porfolios"; therefore, Encore acted more as a debt collector than as a creditor. *Hernandez*, 2007 WL 2874059 at *15-17.

   Defendants contend that the facts have changed since the 2007 *Hernandez* decision. First, the Privacy Notice no longer states that it is from Encore; instead, it purports to have come from MCM only. However, this fact is of little relevance. Simply because Encore is no longer named on the Privacy Notice does not mean that it has substantively changed its business

---

[4] Defendants concede that MCM and MFL are debt collectors. *See infra* Section I; Ds.' Mem. in Opposition to Pls.' Mot. for Summ. J. 13; Pls.' SOF ¶ 3, 4, 6-9.

activities such that it no longer acts as a debt collector within the meaning of § 1692a(6).

Second, Defendants argue that Brandon Black has been an officer at MCM since 2000 (and is

currently the President and CEO of that company), a fact that was proven to the court's

satisfaction in *Hernandez*.  Defs.' SOF ¶ 8.  Plaintiffs do not dispute this fact.  *Id.*  Defendants

argue that Black had developed debt collection strategies in his capacity as President and CEO of

MCM, not in his work with Encore, but cite no evidence in the record to show why this is

necessarily true.  Defs.' Mem. in Opposition to Pls.' Mot. for Summ. J. 15.  Even if the Court

accepts this to be true, however, evidence from Encore's SEC filings leave no doubt as to the

debt collecting nature of the organization's activities.  These filings state that Encore "has been

in the collection business for over 54 years and started purchasing portfolios for [its] own

account approximately 17 years ago."  Pls.' SOF Appendix 4, Form 10-K for period ending Dec.

31, 1997.  These portfolios consist "primarily of unsecured, charged-off domestic consumer

credit card, auto loan deficiency and telecom receivables purchased from national financial

institutions, major retail credit corporations, telecom companies, and resellers of such

portfolios."  *Id.*  They describe Encore as "a leading accounts receivable management firm."  *Id.*,

Appendix 5, Ex. 99.1 to Form 8-K.  Encore describes itself as a competitor in the "consumer

credit recovery industry."  *Id.*, Appendix 4.

    Defendants' response to its own SEC filings is to deny that they apply only to Encore but

to "the businesses of the Encore family of companies," which include MCM and MFL.  *See, e.g.,*

Defs.' Mem. in Opposition to Pls.' Mot. for Summ. J. 15; Defs.' SOF Ex. A, Affidavit of Brian

Frary, Jan. 20, 2009.  However, Encore's public filings make no mention of these other

companies.  Encore was required to file these forms under the Securities and Exchange Act, 15

U.S.C. § 78a *et seq.*, and the filings speak for themselves.  They clearly document the company's

activities as a debt collector.  There is no evidence in the record that convinces this Court to hold differently than the *Hernandez* court.  Therefore, the Court finds Encore to be a debt collector within the meaning of the FDCPA.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted as to the § 1692e(5) claim, and Defendants' motion for summary judgment is granted as to the § 1692c and § 1692d(3) claims.

Enter:

                                    /s/ David H. Coar
                                    David H. Coar
                                    United States District Judge

**Dated:** March 10, 2009