# EXHIBIT A

In the

# United States Court of Appeals
### For the Seventh Circuit

No. 08-3458

ALICE A. RUTH and MARYLOU HAHN,

*Plaintiffs-Appellants,*

*v.*

TRIUMPH PARTNERSHIPS, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 3:06-cv-50042—Frederick J. Kapala, *Judge.*

ARGUED MAY 5, 2009—DECIDED AUGUST 17, 2009

Before RIPPLE AND SYKES, *Circuit Judges,* and LAWRENCE,
*District Judge.*[*]

RIPPLE, *Circuit Judge.* Alice A. Ruth and Marylou Hahn
brought this class action in the United States District Court

---

[*] The Honorable William T. Lawrence, United States District
Judge for the Southern District of Indiana, is sitting by designa-
tion.

for the Northern District of Illinois against Triumph Partnerships, LLC, and Triumph Asset Services, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. The district court certified the class on January 8, 2008. The parties filed cross-motions for summary judgment. The court initially denied the motions, but later reconsidered its earlier decision and granted summary judgment to the defendants.

Ms. Ruth and Ms. Hahn now appeal; they contend that the district court erred in granting summary judgment to the defendants and in failing to grant summary judgment to them. For the reasons set forth in this opinion, we now reverse the district court's judgment and remand with instructions to enter judgment in favor of the plaintiffs.

# I

## BACKGROUND

### A.

Defendant Triumph Partnerships is a company that purchases defaulted debts and attempts to recover them. Defendant Allied International Credit Corporation, doing business as Triumph Asset Services ("TAS"), is a debt collection agency. Both of these entities are independently operated subsidiaries of the same parent company, Allied Global Holdings.

The plaintiff class, represented by Alice A. Ruth and Marylou Hahn (collectively "Ms. Ruth" or "plaintiffs"),

consists of individuals who owed debts purchased by Triumph Partnerships. Triumph Partnerships hired TAS to collect these debts.

In January 2006, TAS sent a letter to each plaintiff. The first sentence of the letter, which was titled "Notification of Assignment," stated: "TRIUMPH PARTNERSHIPS LLP recently purchased your [credit card] account and Triumph Asset Services ('TAS'), a debt collection company, is the servicer of this obligation." R.1, Ex. A. The letter then listed the amount owed and stated: "As the new owner of this account, we have authorized TAS to work with you to find a positive resolution to this outstanding debt. Once TAS receives your payment of [amount], we will notify the credit bureaus that the debt is 'Paid' and immediately stop all recovery activity on this account." *Id.* The letter also stated: "Please understand that this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." *Id.*

In the same envelope as the collection letter was a second document, titled "Privacy Notice of Financial Information From Triumph Partnerships LLC ('TPLLC') and its affiliates" (the "notice"). *Id.* The notice, which stated that it was "sent on behalf of TPLLC and its affiliate: Triumph Asset Services," also stated the following:

What Information Do we collect and share?

To the extent permitted by law, we may collect and/or share all the information we obtain in servicing your account. We collect information

No. 08-3458

about you to service your account with the highest
quality.

. . . .

We may share information about you (whether you
are a customer or former customer) to the following
third parties:

- Non-financial companies, such as direct market-
  ers or retailers financial service companies (like
  banks, mortgage lenders, and organizations
  with which we have a joint marketing agree-
  ments [sic])

- Non-financial companies, such as direct market-
  ers or retailers as outlined below in the OPT-
  OUT NOTICE section, you may tell us not to
  share information about you with outside com-
  panies. However, that choice will not affect
  sharing: with credit reporting agencies, with
  third party collection agencies, with attorneys,
  with companies that process financial products,
  in connection with the sale of debt portfolios,
  and to respond to legal subpoenas and other
  legal process.

    . . . .

OPT-OUT NOTICE

You have the option of directing us NOT to disclose
your information with outside companies (other than
those disclosures permitted by law). If you prefer
that we do not disclose nonpublic personal informa-

No. 08-3458                                        5

tion about you to nonaffiliated third parties, please
fill out the Opt-Out Response Form on the reverse
side . . . .

*Id.* The language of the notice was chosen by Richard Arko,
Triumph Partnerships' vice president, who selected the
letter from samples provided by a letter vendor. After
selecting this language, Arko sent it to TAS' compliance
office for review. TAS returned the notice, altered
in form but unchanged in substance, about three weeks
later.

## B.

Beginning in January 2006, TAS sent an envelope con-
taining a collection letter and a copy of the notice to each
of the plaintiffs. In March 2006, Ms. Ruth filed this
action in the United States District Court for the
Northern District of Illinois. She alleged that by sending
the notice, the defendants had violated the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e.

The parties filed cross-motions for summary judg-
ment. Ms. Ruth contended that the notice violated the
FDCPA because it made a false statement in connection
with the collection of a debt and threatened illegal action.
She claimed that the notice falsely stated that the defen-
dants, by law, could disclose certain nonpublic informa-
tion about the debtor without the debtor's permission,
and would do so unless the debtor expressly "opted out."
Ms. Ruth submitted that these statements were false
and constituted a threat to take illegal action because

the FDCPA prohibits debt collectors from sharing nonpublic information about a debtor without the debtor's explicit consent.

The defendants argued that they were entitled to summary judgment because the notice was not sent in connection with the collection of a debt. They claimed that the notice was sent "not for the purpose of collecting the debt but in order to satisfy Triumph Partnerships' obligations under the [Gramm-Leach-Bliley Act]."[1] The defendants also argued that even if the notice was a communication in connection with collection of a debt, it did not run afoul of section 1692e because it did not make any false or misleading statement. Moreover, even if the notice was a false or misleading communication in connection with collection of a debt, the defendants argued that they were shielded from liability by the FDCPA's "bona fide error defense," which provides that debt collectors are not liable for FDCPA violations that were "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Triumph Partnerships further argued that it was not a "debt collector" as defined in the FDCPA and that the statute's restrictions therefore did not apply to it.

On January 22, 2008, the district court denied both parties' motions for summary judgment. The court began

---

[1] The Gramm-Leach-Bliley Act, Pub. L. 106-102, 113 Stat. 1338 (1999), is a federal statute that, among other things, requires financial institutions to send a privacy notice whenever a new consumer relationship is established.

by holding that Triumph Partnerships was a debt
collector under the FDCPA. The court then rejected the
defendants' other arguments because it concluded that
there were disputed issues of material fact as to whether,
when viewed from the perspective of an "unsophisticated
consumer," the notice: (1) was a communication in con-
nection with the collection of a debt and (2) threatened to
take illegal action.[2] The court held that a reasonable jury

---

[2] The district court in its decision, and the parties in their
arguments before us, treat Ms. Ruth's two claims—that
the notice is a "threat to take . . . action that cannot legally be
taken or that is not intended to be taken" in violation of
15 U.S.C. § 1692e(5), and that it is also "a false representation or
deceptive means to collect or attempt to collect [a] debt" in
violation of 15 U.S.C. § 1692e(10)—somewhat interchangeably.
This is appropriate in this case, because the two claims stand
or fall together: if the notice does falsely or deceptively claim a
right to share the plaintiffs' information without their consent,
then it is also a threat to take illegal action; if the notice is not
false or misleading, then it is not such a threat.

In any event, the FDCPA does not require Ms. Ruth to prove
that the notice violated any particular subpart of section 1692e.
The statute requires only that she prove that it was a "false,
deceptive, or misleading misrepresentation or means in con-
nection with the collection of any debt." 15 U.S.C. § 1692e.
Sections 1592e(5) and (10) are simply items in a non-exclusive
list of examples of ways in which the statute can be violated.
*See id.; Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002)
("The FDCPA broadly prohibits a debt collector from using
'any false, deceptive, or misleading representation or means
(continued...)

could conclude that the notice was a communication in connection with collection of a debt because it was the only other document in the envelope with the collection letter, both documents contained the same Triumph logo, and both documents were worded as though they had been written by Triumph Partnerships. The court also rejected the defendants' argument that the bona fide error defense entitled them to summary judgment. The court concluded that the evidence, when reviewed in the light most favorable to Ms. Ruth, was not sufficient to allow it to conclude that the defendants were entitled to the defense as a matter of law.

The district court also denied Ms. Ruth's motion for summary judgment. The court held that, although there was enough evidence to support a jury's finding that the notice violated the FDCPA, the evidence was not sufficient to allow the court to find a violation as a matter of law.

Shortly before the trial was scheduled to begin, the district court reconsidered its decision on summary

---

2 (...continued)
in connection with the collection of any debt.' The statute proceeds to identify sixteen, nonexclusive instances of conduct that would constitute a violation of this prohibition."); *Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 260 (8th Cir. 1992) ("Section 1692e then sets out a non-exclusive list of sixteen specific violations of the FDCPA."); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 24 (2d Cir. 1989) ("The sixteen subsections of section 1692e detail nonexclusive specifications of this general prohibition.").

No. 08-3458                                          9

judgment. It asked the parties to submit briefs addressing
whether the case law of this circuit required Ms. Ruth to
present extrinsic evidence to prove that the unsophisti-
cated debtor: (1) would view the notice as a communica-
tion in connection with collection of a debt and (2) would
interpret the notice as a threat to take illegal action.
After considering the parties' briefs, the court concluded
that Ms. Ruth could not prevail on her claim without
presenting extrinsic evidence on these two points. Be-
cause she had not introduced any such extrinsic
evidence, the court granted summary judgment to the
defendants. Ms. Ruth now appeals that decision.

## II

## DISCUSSION

We review a district court's grant or denial of summary
judgment de novo. *Belcher v. Norton*, 497 F.3d 742, 747 (7th
Cir. 2007).

Ms. Ruth raises five points of error on appeal, but these
really boil down to two arguments. First, she argues that
the court erred in granting summary judgment to the
defendants rather than to her because it concluded that
she was required to produce extrinsic evidence that the
notice was sent in connection with the collection of a debt
and that the notice threatened illegal action. Second, she
argues that the district court should have entered sum-
mary judgment in her favor on the defendants'
bona fide error defense. We shall consider these points in
due course. Before we turn to Ms. Ruth's arguments,

however, we must address an argument by Triumph Partnerships that it is not subject to FDCPA liability at all.

### A.

Triumph Partnerships submits that, even if the mailing did run afoul of the FDCPA, Ms. Ruth nevertheless has no cause of action against it because the FDCPA does not apply to it. The FDCPA regulates only the conduct of "debt collectors," and Triumph Partnerships submits that it is not a debt collector as that term is defined by the FDCPA. Section 1692a(6) defines a "debt collector" as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6). Section 1692a(4) defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

Triumph Partnerships submits that "it is a creditor and not a debt collector because it purchases delinquent debt thereby becoming one 'to whom a debt is owed' under § 1692a(4)." Appellees' Br. 27. It contends that it does not

fit the statutory definition of a debt collector because it does not collect debts; rather, it purchases debts and then hires others to collect them. The district court considered this argument and rejected it. Triumph Partnerships contends that the district court erred in doing so.

Ms. Ruth responds by suggesting that Triumph Partnerships cannot make this argument because it did not file a cross-appeal. We cannot accept this view. "We may affirm summary judgment on any basis supported in the record." *Klebanowski v. Sheahan,* 540 F.3d 633, 639 (7th Cir. 2008) (citing *Holmes v. Vill. of Hoffman Estates,* 511 F.3d 673, 681 (7th Cir. 2007)); *see also Morley Const. Co. v. Md. Cas. Co.,* 300 U.S. 185, 191 (1937) ("Without a cross-appeal, an appellee may 'urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.'" (quoting *United States v. Am. Ry. Express Co.,* 265 U.S. 425, 435 (1924))).

On the merits, Ms. Ruth contends that the district court was correct to hold that Triumph Partnerships is a debt collector under the FDCPA. Relying on our decisions in *McKinney v. Cadleway Properties,* 548 F.3d 496, 501 (7th Cir. 2008), and *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 539 (7th Cir. 2003), she submits that "[t]he purchaser of a debt in default who undertakes directly or indirectly to collect the debt is a debt collector." Reply Br. 20.

Triumph Partnerships' argument is foreclosed by our precedents. The FDCPA distinguishes between debt

No. 08-3458

collectors, who are subject to the statute's requirements, and creditors, who are not. "For purposes of applying the Act to a particular debt, these two categories . . . are mutually exclusive." *Schlosser*, 323 F.3d at 536. Where, as here, the party seeking to collect a debt did not originate it but instead acquired it from another party, we have held that the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired. *See McKinney*, 548 F.3d at 501; *Schlosser*, 323 F.3d at 538-39. We based this interpretation on the language of the statute, which excludes from its definition of "creditor" those who acquire and seek to collect a "debt in default," 15 U.S.C. § 1692a(4), and excludes from its definition of "debt collector" those who seek to collect a debt "which was not in default at the time it was obtained," *id.* § 1692a(6)(F).

We also found support for this distinction in the rationale behind Congress' decision to treat the originator of a debt obligation differently from a party whose only interest is in the collection of a debt that already has fallen into default. We explained this rationale in *Schlosser*:

> Creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," S. Rep. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, are not covered by the Act. Instead, the Act is aimed at debt collectors, who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them."

*Schlosser,* 323 F.3d at 536. The purchaser of an already-defaulted debt—like the debt collector, and unlike the originator and servicer of a non-defaulted debt—has no ongoing relationship with the debtor and, therefore, no incentive to engender good will by treating the debtor with honesty and respect. Accordingly, we have held that a party that seeks to collect on a debt that was in default when acquired is a debt collector under the FDCPA, "even though it owns the debt and is collecting for itself." *McKinney,* 548 F.3d at 501 (citing *Schlosser,* 323 F.3d at 538-39).

Triumph Partnerships does not dispute that the debts at issue in this case already were in default when acquired them. Thus, *Schlosser* and *McKinney* compel the conclusion that Triumph Partnerships is a debt collector under the FDCPA and is, therefore, subject to its provisions.

Triumph Partnerships maintains that it should not be considered a debt collector in this case because it "took no . . . action" to collect the debts at issue in this case. Appellees' Br. 28. It points out that it "did not draft, authorize, or send the collection letter at issue in this lawsuit." *Id.* Responsibility for drafting the letter, however, is irrelevant. Ms. Ruth does not take issue with the collection letter itself; rather, she alleges that the notice, which was sent in the same envelope as the letter, falsely or deceptively claimed that the defendants had the right to disclose the plaintiffs' personal information without their permission. Triumph Partnerships admits that it drafted the notice and directed TAS to

include it in the mailing with the collection letter. If, as Ms. Ruth alleges, the notice was sent "in connection with" an attempt to collect a debt—a question we shall address below—then Triumph Partnerships' control over its drafting and mailing plainly constituted affirmative conduct with regard to collecting a debt.

### B.

We turn next to Ms. Ruth's arguments on appeal. Ms. Ruth contends that the district court should have denied the defendants' motion for summary judgment and instead granted summary judgment to her. She argues that, as a matter of law, the mailing at issue in this case violated section 1692e. Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* § 1692e(5). The statute also proscribes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain any information concerning a consumer." *Id.* § 1692e(10).

The district court granted summary judgment for the defendants in part because it read this court's decisions to require a plaintiff who attacks a collection notice under the FDCPA to present extrinsic survey evidence proving that unsophisticated consumers would be deceived or misled. The district court concluded that

Ms. Ruth had to present extrinsic evidence that the unsophisticated consumer would view the notice as a communication in connection with the collection of a debt and that the notice threatened illegal action. Because Ms. Ruth had presented no such evidence, the district court concluded that the defendants were entitled to summary judgment.

Ms. Ruth submits that the district court's decision was in error. She contends that it is inappropriate to require extrinsic evidence to prove that a notice was sent "in connection with" an attempt to collect a debt. She also argues that, although extrinsic evidence sometimes is required to prove that a communication was deceptive or misleading, the FDCPA does not require such evidence when the communication contains an unambiguous misstatement of the law.

## 1. The "In Connection With" Element

The district court granted summary judgment to the defendants in part because it read our case law to require the plaintiffs to establish, via extrinsic evidence, that the unsophisticated debtor would view the notice as having been sent in connection with an attempt to collect a debt. Ms. Ruth submits that this conclusion was erroneous; she contends that whether a communication was sent in connection with collection of a debt should be measured by an objective standard rather than a subjective one. Otherwise, she contends, debt collectors will be free to send false or misleading collection letters as long as the letters are *so* misleading that the unsophisticated

consumer fails to recognize them as attempts to collect a debt. Ms. Ruth submits that this would be a nonsensical result.

Whether the "in connection with" element is subject to the unsophisticated-consumer standard is one of first impression for our court; indeed, we are not aware of, nor have the parties advised us of, any decision by a federal court of appeals addressing the question. In light of the statute's purposes, and the consequences that would follow from the district court's approach, we must conclude that the proper standard is an objective one. To hold, as the district court did, that a communication is made in connection with collection of a debt—and, therefore, is subject to the FDCPA's protections—only if the unsophisticated consumer recognizes it as such, would stand the statute on its head. Unscrupulous debt collectors could shield themselves from liability simply by disguising their collection letters as something else. The more deceptive the letters were, the more likely they would escape FDCPA liability. Needless to say, Congress' intent in enacting the FDCPA was not to encourage debt collectors to deceive consumers; in fact, it was just the opposite. Thus, we conclude that whether a communication was sent "in connection with" an attempt to collect a debt is a question of objective fact, to be proven like any other fact. It need not be established by extrinsic evidence of what the unsophisticated consumer might think.

Turning to the facts of this case, we believe that any reasonable trier of fact would conclude that the notice

was sent in connection with an attempt to collect a debt. The notice was sent in the same envelope as the collection letter, which the defendants admit was sent for debt-collection purposes. Both the notice and the letter refer to both defendants: Triumph Partnerships, the owner of the defaulted debt, and TAS, the company hired to try to collect it. The only relationship the defendants had with the plaintiffs arose out of Triumph Partnerships' ownership of the plaintiffs' defaulted debt.[3] In sum, the defendants would not have sent this combination of materials to the plaintiffs if they had not been attempting to collect a debt.

Accordingly, the district court erred in granting summary judgment to the defendants because of Ms. Ruth's failure to produce extrinsic evidence to satisfy the "in

---

[3] There is some evidence in the record indicating that the defendants phrased the notice the way they did because Triumph Partnerships had contemplated offering the plaintiffs an opportunity to discharge the defaulted debt by transferring it to a new credit account. If the debtor agreed to such an arrangement, the new account would not be subject to the FDCPA, and the defendants could share certain nonpublic information acquired while servicing that account without the debtor's prior consent.

Any plans along these lines that the defendants might have had are irrelevant to this case, however, because neither the collection letter nor the notice ever mentions such an arrangement or indicates that the information-sharing described in the notice would be limited to information collected pursuant to such an arrangement.

connection with" element of her FDCPA claim. As a matter of law, the letter and notice were sent in connection with an attempt to collect a debt.

## 2. The "False, Deceptive, or Misleading" Element

As discussed above, 15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute specifies sixteen types of conduct that run afoul of this prohibition. In her complaint, Ms. Ruth relied upon two subsections: section 1692e(5), which proscribes "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and section 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

The notice states that "[t]o the extent permitted by law, we may collect and/or share all the information we obtain in servicing your account." R.1, Ex. A. It goes on to describe the types of information the defendants might collect and the parties with which it might share that information. Ms. Ruth submits that the notice violates the FDCPA because it implies that the defendants have a legal right to collect and share nonpublic information about the debtor without the debtor's prior consent. In effect, Ms. Ruth claims that the defendants stated in the notice they had the legal authority to disclose nonpublic personal information and then stated that they might, in fact, share such information with

other parties. She contends that such information-sharing is illegal under the FDCPA; thus, she argues, the notice is false, in violation of section 1692e(10), and constitutes a threat to take illegal action, in violation of section 1692e(5). In her view, because the notice is objectively and materially false, the district court erred in requiring extrinsic evidence to prove that it was misleading to the unsophisticated consumer.

We recently considered, and rejected, Ms. Ruth's argument that a false statement automatically violates the FDCPA. In *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643 (7th Cir. 2009), we explained that an FDCPA plaintiff bears the burden of proving that even a false statement would mislead or deceive the unsophisticated consumer:

> If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense. For purposes of § 1692e, then, a statement isn't "false" unless it would confuse the unsophisticated consumer. *See Turner [v. J.V.D.B. & Assoc.]*, 330 F.3d [991, 995 (7th Cir. 2003)] ("[O]ur test for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer."). So, while the FDCPA is a strict liability statute—a collector "need not be deliberate, reckless, or even negligent to trigger liability," *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th

Cir. 2007), the state of mind of the reasonable debtor is always relevant. The upshot? Wahl can't win simply by showing that Midland's use of the term "principal balance" is false in a technical sense; she has to show that it would mislead the unsophisticated consumer.

*Id.* at 645-46. *Accord Muha v. Encore Receivable Mgmt., Inc.,* 558 F.3d 623, 627 (7th Cir. 2009); *Hahn v. Triumph P'ships LLC,* 557 F.3d 755, 757 (7th Cir. 2009).

Thus, contrary to Ms. Ruth's arguments, she could not prevail in the district court simply by proving that statements in the notice were false. Whether they were false or not, she had to prove that an unsophisticated consumer would be deceived or misled by them.

The next question we must consider is whether Ms. Ruth was required to produce extrinsic evidence in order to meet this burden. A review of our prior decisions in FDCPA cases reveals that suits alleging deceptive or misleading statements fall into three distinct categories. In the first category are cases involving statements that plainly, on their face, are not misleading or deceptive. In these cases, we do not look to extrinsic evidence to determine whether consumers were confused. Instead, we grant dismissal or summary judgment in favor of the defendant based on our own determination that the statement complied with the law. *See, e.g., Hahn,* 557 F.3d at 757 (affirming summary judgment for the defendants where the alleged falsehood was immaterial and therefore could not be misleading); *Wahl,* 556 F.3d at 646 ("[W]e see no way this language would confuse the reasonable consumer, unsophisticated though she may

be."); *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 841 (7th Cir. 2007) (affirming a grant of summary judgment for the defendants because "we [could] not see how an unsophisticated consumer" could interpret the communication in the misleading manner suggested by the plaintiffs).

The second category of cases involves statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer. In these cases, we have held that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive. *See, e.g., Hahn*, 557 F.3d at 757 ("Hahn does not contend that the 'interest due' line item is misleading. To get anywhere with such an argument she would need to introduce survey evidence, or some equivalent, demonstrating how the language actually affects borrowers."); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007) ("[W]e have no way of determining whether a sufficiently large segment of the unsophisticated are likely to be deceived to enable us to conclude that the statute has been violated. For that, evidence is required, the most useful sort being the . . . consumer survey . . . ."); *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007).[4] The district court in this case

---

[4] In *Williams*, we wrote:

> Our past cases indicate that summary judgment may be avoided by showing that the letter, on its face, will confuse
> (continued...)

thought that the notice fell into this category. In the absence of any extrinsic evidence, the court granted summary judgment for the defendants.

Not every meritorious FDCPA claim requires such extrinsic evidence, however; some collection notices are clearly misleading on their face. Cases involving plainly deceptive communications fall into a third category, one where we will grant summary judgment for the plaintiffs without requiring them to prove what is already clear. As we explained in *McKinney,* "in some situations . . . a debt collector's letter may be so clearly confusing on its face that a court may award summary judgment to the plaintiff on that basis." 548 F.3d at 503 (citing *Durkin v. Equifax Check Servs.,* 406 F.3d 410, 415 (7th Cir. 2005)); *see also Chuway v. Nat'l Action Fin. Servs., Inc.,* 362 F.3d 944, 948 (7th Cir. 2004) (excusing the plaintiff's burden to produce extrinsic evidence, based on the court's own determination that the letter at issue was confusing).

We believe that this case falls into this third category. Upon receiving and reading the collection letter and

---

[4] (...continued)
 a substantial number of recipients. We also have said that, absent a showing that the face of the letter will precipitate such a level of confusion, the plaintiff must come forward with evidence beyond the letter and beyond [her] own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial.

505 F.3d at 678 (alteration in original).

the notice, the only reasonable conclusion that an unso-phisticated consumer[5]—or, indeed, any consumer—could reach is that the defendants were claiming a legal right to disclose the nonpublic information about the debtor that they had obtained as a consequence of attempting to collect the debt, and were threatening to do so unless the debtor affirmatively "opted out." After all, the defendants had no other relationship with the plaintiffs and therefore had no foreseeable prospect of obtaining nonpublic information in any other way. The defendants do not deny that sharing the nonpublic information they had about the plaintiffs, without their express prior consent, would have violated the FDCPA.[6] Thus, on its face, the only reasonable interpretation of the notice was as a threat to take illegal action.

---

[5] "The unsophisticated debtor is 'uninformed, naive, [and] trusting' but is also assumed 'to possess rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences.'" *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 503 (7th Cir. 2008) (alteration in original) (quoting *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005)).

[6] The defendants submit that the Gramm-Leach-Bliley Act permits the sharing of certain kinds of nonpublic information unless a customer affirmatively opts out. *See* Appellees' Br. 17-19. This is irrelevant, however, because, with a few exceptions not applicable here, the FDCPA bars debt collectors from communicating with third parties about a debtor in the absence of "the prior consent of the consumer given directly to the debt collector . . . ." 15 U.S.C. § 1692c(b).

The defendants argue that the notice does not falsely claim a right to share the plaintiffs' nonpublic information because it states that the defendants will do so only "to the extent permitted by law." Appellees' Br. 20. To threaten to take some action "to the extent permitted by law," however, is to imply that, under some set of circumstances and to some extent, the law actually permits that action to be taken. Here, the defendants have suggested no set of circumstances under which the FDCPA would have permitted disclosure of the plaintiffs' nonpublic information without their consent. If anything, the notice's implication to the contrary makes the statement *more* misleading, not less. *See Gionis v. Javitch, Block & Rathbone, LLP*, 238 Fed. App'x 24, 27-29 (6th Cir. 2007) (unpublished disposition) (holding that the defendant's representation that it could collect attorney's fees "to the extent permitted by applicable law" violated the FDCPA because the applicable state law did not permit collection of such fees).

Thus, we conclude that the only reasonable conclusion an unsophisticated consumer could reach, upon receiving the collection letter and the notice, was that the defendants intended to share without permission the nonpublic information they had received by virtue of acquiring and collecting on the debts. As a matter of law, therefore, the notice constitutes "a threat to take . . . action that cannot legally be taken," 15 U.S.C. § 1692e(5), and a "false representation or deceptive means to collect or attempt to collect a[] debt," *id.* § 1692e(10).

## C.

Finally, Ms. Ruth submits that the district court erred in failing to grant summary judgment in her favor on the defendants' assertion of the bona fide error defense. 15 U.S.C. § 1692k(c) provides that a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." The district court held that the defendants had produced enough evidence to create a genuine issue of triable fact as to whether the procedures they had in place were sufficient to entitle them to the protection of this statutory defense.

Ms. Ruth submits that the district court erred in declining to hold that, as a matter of law, the defendants' actions did not qualify as bona fide error under the FDCPA. In support of her argument, Ms. Ruth relies on our decision in *Seeger v. AFNI, Inc.*, 548 F.3d 1107 (7th Cir. 2008). In that case, this court held that the defendant, which had attempted to collect fees that were not authorized by Wisconsin state law, was not entitled to the FDCPA's bona fide mistake defense because it did not have in place reasonable procedures designed to prevent errors. The court acknowledged that the defendant's employees regularly reviewed legal summaries prepared by trade groups (though only on the FDCPA, not on state law) and read excerpts of relevant state statutes. The court concluded, however, that this was not suf-

ficient. The court specifically noted that the defendant "never consulted an attorney in Wisconsin on state law issues, nor did it ask a Wisconsin governmental agency whether it was entitled to charge a collection fee as the owner of the debt." *Id.* at 1114. We rejected the defendant's contention "that its ignorance of the law should be excused because it attempted to keep itself informed about the law through the various trade association communications"; we concluded that "this [was] not enough . . . to support the *bona fide* error defense." *Id.*

Ms. Ruth submits that, like the defendants in *Seeger*, the defendants in this case failed to establish procedures that were sufficient to establish a defense of bona fide error. She notes that the defendants apparently never asked an attorney to review the notice; instead, they relied on a 2001 pamphlet published by a trade group called the Debt Buyers' Association.

The defendants, on the other hand, contend that their procedures were reasonably sufficient to prevent errors. They point to evidence in the record that Rick Arko, the Vice President who chose the original notice language, had extensive training in FDCPA and Gramm-Leach-Bliley compliance, and that the notice was reviewed by Kevin Bradford of TAS' Compliance Department. They also defend their reliance on a pamphlet from the Debt Buyers' Association that was written by a lawyer.

We note at the outset that the defendants' error was an error of law: They misconstrued whether the notice satisfied the statute's requirements. It is an open question whether the FDCPA's bona fide error provision applies

No. 08-3458                                                    27

to legal errors, or just to procedural or clerical errors such as stating incorrectly the amount owed or inadvertently mailing a required communication to the wrong address. The courts of appeals are divided on this question,[7] and the Supreme Court recently granted certiorari on the issue. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476 (6th Cir. 2008) (holding that the defense applies to legal errors), *cert. granted*, 557 U.S. ___ (June 29, 2009).

We have not taken a side in this intercircuit split. Although we occasionally have assumed, in cases where it made no difference to the outcome, that the defense applies to legal errors, we have not yet resolved the question definitively.[8] The same is true in this case. We

---

[7] *Compare Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982) (holding that the defense does not apply to legal errors), *and Hulshizer v. Global Credit Servs., Inc.*, 728 F.2d 1037, 1038 (8th Cir. 1984) (same), *and Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) (same), *with Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476 (6th Cir. 2008) (holding that the defense applies to legal errors), *cert. granted*, 557 U.S. ___, (June 29, 2009), *and Johnson v. Riddle*, 305 F.3d 1107, 1121-23 (10th Cir. 2002) (same).

[8] *See, e.g., Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1114 (7th Cir. 2008) ("We have no need to take sides on the circuit split in this case, because, even assuming that AFNI's mistake was a mistake of law, it cannot prevail for other reasons."); *Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002) ("This question, which the parties have not addressed, is not one that we need
(continued...)

have no need to decide whether the bona fide error defense applies to the defendants' error, or to wait for the Supreme Court's judgment on the matter, because a thorough review of the record convinces us that the steps the defendants took were not sufficient to qualify for the defense.

A defendant is entitled to invoke the FDCPA's bona fide error defense only if it can show that the violation: (1) was unintentional, (2) resulted from a bona fide error, and (3) occurred despite the debt collector's maintenance of procedures reasonably adapted to avoid such error. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (citing *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997)). Ms. Ruth does not contend that the defendants have failed to establish the first two elements; she submits, however, that they did not have reasonable procedures in place to prevent the kind of error they committed in this case.

Because so few courts have sanctioned the use of the bona fide error defense to excuse errors of law, there is little authority to guide us in determining whether a party's use of any particular set of procedures was reasonable. In *Seeger*, we held that the defendant's procedures were insufficient because they did not include consulting an attorney, or the appropriate governmental agency, about whether the communications sent to

---

[8] (...continued)
to decide here. We shall again assume that Household may avail itself of the defense . . . .").

debtors accurately stated the law. *Seeger*, 548 F.3d at 1114 ("[The defendant] never consulted an attorney in Wisconsin on state law issues, nor did it ask a Wisconsin governmental agency whether it was entitled to charge a collection fee as the owner of the debt."). In *Jerman*, the Sixth Circuit held that the defendant, a law firm, had earned the protection of the defense by employing "specific procedures to comply with FDCPA and its ever-changing body of law":

> Defendant law firm has designated its senior principal, Richard McNellie, as the individual responsible for compliance with the FDCPA; McNellie regularly attends conferences and seminars that focus on FDCPA issues; the firm subscribes to "Fair Debt Collection," a part of "The Consumer Credit and Legal Practice Series," together with the supplements thereto; McNellie routinely distributes copies of cases relevant to the firm's practices and procedures to all attorneys at the firm; all new employees, attorneys and nonattorneys, are advised of the firm's obligations under the FDCPA and provided with the firm's FDCPA Procedures Manual, and encouraged to seek McNellie's advice with questions regarding the FDCPA; McNellie conducts a mandatory meeting at least twice a year for all available employees wherein FDCPA issues and developments are discussed.

*Jerman*, 538 F.3d at 477 (citation and quotation marks omitted). In *Johnson v. Riddle*, 443 F.3d 723, 730-31 (10th Cir. 2006), the Tenth Circuit held that the defendant, an attorney, could establish a bona fide error defense by

No. 08-3458

proving that he had (1) researched relevant statutes
and case law to determine whether state law gave debt
collectors the right claimed in the collection letters,[9] and
(2) filed a "test case" to verify that collectors indeed
had such a right under state law. In considering what
kinds of procedures would be sufficient to establish a
bona fide error of law, the court noted:

> Procedures which may be reasonably adapted to
> avoiding a clerical error—*e.g.*, sending employees and
> staff to training seminars or subjecting employees
> and staff to compliance testing—cannot shield an
> attorney from liability for legal errors because such
> clerical procedures are mostly about the mechanics
> for collecting debts. *Furthermore, only Riddle, as the
> attorney in charge, rather than his staff or employees, may
> make a core legal decision as to whether a particular practice
> is permitted by law.* Thus, in order for his mistake to
> have been bona fide, Riddle himself must have em-
> ployed procedures to avoid committing an error, and
> those procedures must have been reasonably adapted
> to avoiding the core legal error that occurred.

*Id.* at 730 (emphasis added).

After reading these cases, we conclude that, *if* the bona
fide error defense is available at all for errors of law, it is
available only to debt collectors who can establish that
they reasonably relied on either: (1) the legal opinion of

---

[9] The legal issue in *Johnson* was whether state law permitted
the recipient of a bad check to demand a $250 "shoplifting
penalty" from the person who wrote the check.

an attorney who has conducted the appropriate legal research, or (2) the opinion of another person or organization with expertise in the relevant area of law—for example, the appropriate government agency.[10]

Measured against this standard, the defendants' procedures fall short. Although the defendants have produced evidence that their employees attended training sessions on FDCPA compliance, and that they had procedures in place to prevent violations of other provisions of the FDCPA, they point to no evidence in the record indicating that they ever sought legal or regulatory advice as to whether the collection letter and notice were in compliance with the FDCPA. The defendants claim that they reasonably relied on a 2001 pamphlet titled "Questions and Answers about New Federal Privacy Regulations As They Apply to Debt Buyers and Other 'Financial Institutions.'" R.57, Ex. G at 1. The pamphlet, which was written by an attorney and published by the Debt Buyers' Association, suggests that "a possible way to comply [with Gramm-Leach-Bliley] would be to have the third party collector send out your entity's privacy notice on your 'financial institution's' letterhead; for economy, that notice could be included with that agency's or law firm's FDCPA validation letter." *Id.* at 12. The defendants claim

---

[10] We do not hold that a debt collector necessarily must consult with an attorney or government agency to get individualized approval of every communication it wishes to send out. Under the circumstances of a particular case, reliance on general advice from a qualified attorney or government agency might well be sufficient to support a claim of bona fide error.

that their reliance on this advice was reasonably adapted to prevent legal mistakes.

We disagree. The pamphlet falls far short of a legal opinion on which it was reasonable for the defendants to rely for the proposition that their letter and the notice were in compliance with the FDCPA. First of all, the pamphlet does not purport to give advice about the FDCPA; it is focused on compliance with federal regulations implementing the privacy provisions in the Gramm-Leach-Bliley Act. Second, the pamphlet specifically disclaims that it is providing legal advice, and directs the reader to consult an attorney before taking any action. The pamphlet's front page explicitly states:

> **This pamphlet does not provide legal advice.** It is not a complete guide to the new law and regulations. Rather, it is a general overview of a brand new complicated law and implementing regulations. The more your entity wants to market data, the more onerous the compliance. . . . The reader should consult with legal counsel regarding the applicability of the statutes and regulations to his or her debt buying entity or "financial institution" as defined therein. There are many variations to how the law and FTC regulations will apply depending on how your entity is structured, its marketing and servicing arrangements with third parties, whether or not it is part of an affiliated group, and whether your entity wants to sell information to third parties.

*Id.* at 1. Third, and perhaps most critically, the pamphlet does not provide any advice about how a disclosure

notice should be worded to comply with the FDCPA. In light of all this, the pamphlet is simply too insubstantial to justify the defendants' reliance on it in concluding that the notice complied with the FDCPA. Ms. Ruth was entitled to summary judgment on the defendants' attempt to raise the bona fide error defense.

## Conclusion

There is no evidence in this record to indicate that the defendants intentionally sought to mislead or to deceive the recipients of the collection letter and notice. The FDCPA, however, is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions. *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007) ("[T]he representation need not be deliberate, reckless, or even negligent to trigger liability—it need only be false . . . ."). Accordingly, for the reasons set forth above, we must reverse the judgment of the district court and remand the case with instructions to enter judgment in favor of the plaintiffs. The defendants shall bear the costs of this appeal.

REVERSED and REMANDED WITH INSTRUCTIONS